SECURITIES & EXCHANGE COMMISSION v. ROBERT COLLIER & CO., Inc., et al.

No. 383.

Circuit Court of Appeals, Second Circuit.
April 8, 1935.

John J. Burns, of Washington, D. C. (Franklin T. Hammond, Jr., of Boston, Mass., Ganson Purcell and Francis Currie, on the brief), for appellant.

Thomas E. Dewey, of New York City (John G. Pembleton and Leo Brown, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The single question presented by this appeal is whether the Securities and Exchange Commission, created under section 4 (a) of title 1 of the "Securities Exchange Act of 1934," section 78d, tit. 15, U. S. Code, 15 USCA § 78d, may appear in the District Court by its own solicitor and file a bill under section 20 (b) of the Securities Act (15 USCA § 77t, subd. (b), or whether it must appear by the Attorney General, or a district attorney. The defendants and the judge thought that the situation fell within our decision in Sutherland v. International Insurance Co., 43 F.(2d) 969; the Commission insists that section 20 (b) is an exception to the general rule. Though we had before us section 20 (b) without any knowledge of its amendments in committee, we might still have held that the contrast between the diction of the two clauses was enough to turn the scale against a tradition of even such long standing as that on which the defendants rely. There would have been strong reasons for supposing that so striking a change in expression could only have proceeded from a deliberate difference of intent, no matter how inveterate the contrary usage. But if that be doubtful, the change in the section on its way through Congress makes the intent entirely plain. When first introduced, the two clauses were in identical language. "Whenever it shall appear to the Commission" (at that time the Federal Trade Commission), "that the practices investigated constitute a fraud * * * it shall transmit such evidence as may be available" to "the Attorney General who may in his discretion bring an action. * * * The Commission may transmit

such evidence as may be available concerning such acts and practices to the Attorney General who may, in his discretion institute the necessary criminal proceedings under this sub-chapter." Hearing on H. R. 4314, 73d Congress, 1st Session, p. 6; Hearings on S. R. 875, p. 7. As the bill then stood, its intent was therefore to follow the ancient custom and deny to the Commission control over civil, as well as criminal, prosecutions. During the hearings before the committees, the chief counsel of the Federal Trade Commission, Robert E. Healey, testified; we quote the relevant passages in the margin.* It was after this that the first clause was changed to its present form. We cannot see how any one can doubt what was the purpose of both committees in this amendment, though it is quite true that they said nothing about it in their reports. Healey was not a casual interloper; he was the person chiefly responsible for the prosecution of the new functions about to be conferred, at least so far as they touched legal questions. There cannot be the least question that in fact it was at his suggestion that the change was made and that it was intended to allow the Commission complete autonomy in civil prosecutions. The committees' intent may be irrelevant in construing the section, but the evidence of it as a fact is incontrovertible.

The defendants suggest that the purpose may have been limited to giving power to the Commission to decide when suits should be begun, but yet to require district attorneys to conduct them. Congress has indeed done just that on occasion. Section 12 (1) tit. 49, U. S. Code, 49 USCA § 12 (1); section 413, tit. 33, U. S. Code (33 USCA § 413); section 486, tit. 28, U. S. Code (28 USCA § 486). But the resulting situation is certainly undesirable administratively, and whenever it has been prescribed, the language has been express. It is extremely unlikely that such a halfway measure should have been here intended. The original bill gave power to the Attorney General not only to decide when to sue, but necessarily to conduct the suit. The amendment was in form at least a transfer of the total power; unless some good reason to the contrary appears, it ought to be construed as total, not as leaving the Commission subject to a public officer whom they could not control. The defendants also suggest that the executive order of June 10, 1933 (No. 6166, 5 USCA § 132 note), transferring to the Department of Justice the prosecution of "claims and demands

---

* "This bill provides that if the Commission discovers fraud and misrepresentation in connection with the sale of securities, it shall bring that information to the attention of the Attorney General, who shall proceed by injunction to stop that fraud and also to prosecute the guilty person criminally. My suggestion is where there is such a condition existing that Congress by this bill should say to the Attorney General, 'Punish them,' and then say to the Federal Trade Commission, 'Stop them.' I would amend this bill to provide for giving the power to apply for injunctions to the Commission. It is not wise to leave it to us to submit the information to the Attorney General. If we get the information why should we not use it and go after the fellow right then and there and get the injunction against him continuing to sell the stock? Why should we tell the Attorney General about it so he can seek the injunction? We should tell the Attorney General about it so that he can punish them, but why divide the responsibility? Why create such a magnificent buck passing opportunity as that?

"Now if this Commission is competent to go out and get these facts,—and I will tell you I think that we are,—and if not, there are two vacancies down there, two vacancies that are just yearning to be filled, by some deserving Democrats,—I tell you I believe that we should be allowed to stop the practice. I submit to you gentlemen, first, if this Commission is on to its job and it finds these fellows selling stock by fraud or misrepresentation, we should be given the power to apply to the courts for an injunction and the prosecuting power should be left to the Attorney General where it belongs." House Report 4312, House of Representatives, 73d Congress, 1st Session, pp. 240, 241.

"I wish to offer the suggestion that in the section of this bill which provides that the power of injunction shall be given, that provision be made that if the Commission which is charged with the administration of the bill finds people acting contrary to law or in defiance of the Act, that Commission and not the Attorney General will proceed to ask for an injunction. I would suggest that it is unwise to divide the responsibility and to encounter the delay that would come if we have to send our stuff to the Attorney General. Let him prosecute criminally, let us proceed to stop them." Senate Report on Bill 875, p. 226.

by" the United States, though not controlling because of its date, is an indication of intent to abide by the older practice. No doubt it is, but no such added indication was needed, for the practice was well settled without it, though it was not quite as inexorable as the defendants suppose. The plaintiff has for example collected a number of instances where the Federal Trade Commission has appeared by its own attorneys, and Congress itself has given that power to the Interstate Commerce Commission. Section 16 (11) title 49, U. S. Code, 49 USCA § 16 (11). But with all this we have nothing to do; such considerations are apposite enough when the language is doubtful, but they are futile here.

Finally, it is said that we should not regard the testimony of a witness before the committees; that it is not even as relevant as speeches on the floor of either house, which courts will not consider at all. United States v. Trans-Missouri Freight Association, 166 U. S. 290, 317, 318, 17 S. Ct. 540, 41 L. Ed. 1007; Duplex, etc., Co. v. Deering, 254 U. S. 443, 474, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196; McCaughn v. Hershey Chocolate Co., 283 U. S. 488, 493, 494, 51 S. Ct. 510, 75 L. Ed. 1183. It would indeed be absurd to suppose that the testimony of a witness by itself could be used to interpret an act of Congress; we are not so using it. The bill was changed in a most significant way; we are concerned to learn why this was done; we find that it can most readily be explained, and indeed cannot naturally be explained on any other assumption than by supposing that the committees assented to a request from the very agency to whom the new functions were to be committed. To close our eyes to this patent and compelling argument would be the last measure of arid formalism. The amendments of a bill in committee are fertile sources of interpretation. Pennsylvania R. Co. v. International Coal Co., 230 U. S. 184, 198, 199, 33 S. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315. It is of course true that members who vote upon a bill do not all know, probably very few of them know, what has taken place in committee. On the most rigid theory possibly we ought to assume that they accept the words just as the words read, without any background of amendment or other evidence as to their meaning. But courts have come to treat the facts more really; they recognize that while members deliberately express their personal position upon the general purposes of the legislation, as to the details of its articulation they accept the work of the committees; so much they delegate because legislation could not go on in any other way.

Decree reversed.