John A. **HILBERT**, III, Petitioner,

v.

The Honorable John F. **DOOLING**, Jr., in his capacity as United States District Judge for the Eastern District of New York, Respondent.

**No. 423, Docket 72–2144.**

United States Court of Appeals, Second Circuit.

Argued Nov. 1, 1972.

Decided March 12, 1973.

Phylis Skloot Bamberger, New York City (Robert Kasanof, The Legal Aid Society, New York City, of counsel), for petitioner.

Raymond J. Dearie, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D. N. Y., L. Kevin Sheridan, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for respondent.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y. (Richard J. Davis, John W. Nields, Jr., Asst. U. S. Attys., New York City, of counsel), for U. S. Atty., S. D. N. Y., as amicus curiae.

Before FRIENDLY, Chief Judge, and KAUFMAN, HAYS, FEINBERG, MANSFIELD, MULLIGAN, OAKES and TIMBERS, Circuit Judges.

MANSFIELD, Circuit Judge:

The question raised by this petition for a writ of mandamus is whether dismissal of a criminal charge pursuant to Rule 4 of our Second Circuit Rules Regarding Prompt Disposition of Criminal Cases[1] (hereinafter "Prompt

1. Rule 4 provides:
   "4. In all cases the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest. If the government is not ready for trial within such time, or within the periods as extended by the district court for good cause under rule 5, and if the defendant is charged only with non-capital offenses, then, upon

Disposition Rules") is with prejudice and thus precludes reindictment for the same offense. Because of the exceptional importance of the issue at the time when the petition was filed, we heard the petition *en banc*. See F.R.App.P. Rule 35(a)(2).[2] We conclude that such a dismissal is with prejudice and that mandamus is the appropriate remedy in this case. Accordingly we order the writ granted and the second indictment dismissed.

On August 5, 1971, the petitioner, John A. Hilbert, III, and one Bruce A. Turnbull, were arrested by agents of the United States Customs Service. The government contends that at the time of their arrest, Hilbert and Turnbull were in possession of two cartons containing approximately 12 kilograms of marijuana which had allegedly been imported into the United States at Kennedy Airport from Jamaica, West Indies. The two cartons were delivered under government control to a house which was then placed under surveillance. The defendants were arrested a short time aft-

er they were observed leaving the house and placing the packages in a car. Neither defendant was incarcerated.

On February 3, 1972, two days before the expiration of the six-month deadline by which the government was required by Rule 4 to be ready for trial, an indictment (the "First Indictment") was filed charging Hilbert with possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841 and 18 U.S. C. § 2.[3] February 17, 1972 was then fixed for the arraignment, at which the defendants pleaded not guilty. On March 10, 1972, at a pretrial conference before Judge Dooling, the defendants moved for the dismissal of the indictment for failure to comply with Rule 4. Six days later, and over seven months after the arrests, the United States Attorney filed a notice of readiness. In a memorandum and order dated March 22, 1972, Judge Dooling, finding the government not ready for trial within six months from the date of arrests and finding none of Rule 5's exclusions applicable,[4] granted the motion to dismiss.

---

application of the defendant or upon motion of the district court, after opportunity for argument, the charge shall be dismissed."

2. The importance of the issue has been somewhat diminished as a result of the recent adoption by the various district courts within the Second Circuit of new rules for the prompt disposition of criminal cases pursuant to Rule 50(b), F.R.Cr.P., which became effective on October 1, 1972.

These local rules specify in more detail the circumstances under which a charge is to be dismissed with prejudice. Our decision, therefore, governs only those dismissals during the period from July 5, 1971, when the Prompt Disposition Rules went into effect, to April 1, 1973, when the new local district court rules become effective.

3. The First Indictment contained two counts. The first count charged both Hilbert and Turnbull with willful possession of marijuana, a violation of 21 U.S.C. § 841, and 18 U.S.C. § 2. The second count separately charged Turnbull with unlawful importation of marijuana (in

violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2).

4. Rule 5 of the Prompt Disposition Rules provides:

"In computing the time within which the government should be ready for trial [the following periods should be excluded by the district court]:

"(a) The period of delay while proceedings concerning the defendant are pending. . . .

"(b) The period of delay resulting from a continuance granted by the district court at the request of, or with the consent of, the defendant or his counsel.

. . .

"(c) The period of delay resulting from a continuance granted at the request of a prosecuting attorney if:

(i) the continuance is granted because of the unavailability of evidence material to the government's case.

. . .

* * * * *

"(d) The period of delay resulting from the absence or unavailability of the defendant. . . .

"(e) A reasonable period of delay when the defendant is joined for trial

On May 30, 1972, the grand jury handed down a "superseding" indictment charging the petitioner with the same offense.[5] The defendants moved for the dismissal of this second indictment on the ground, among others, that Rule 4 precluded reindictment. On June 14, 1972, Judge Dooling denied the motion, holding that a new six-month period commenced as of May 30, 1972, the date of the second indictment. It was with respect to this order that Hilbert petitioned this Court for a writ of mandamus pursuant to F.R.App.P. Rule 21 and 28 U.S.C. § 1651.

■ The Prompt Disposition Rules were adopted pursuant to our supervisory power and 28 U.S.C. § 332. The Rules are designed to alleviate the problems of delay in criminal cases by setting standards stricter than the minimum period prescribed by the applicable statute of limitations or required by the Sixth Amendment. See Statement of the Circuit Council to Accompany Second Circuit Rules Regarding Prompt Disposition of Criminal Cases. However, the Rules do not mandate *trial* within a specified period of time, as has been urged by some. See, e. g., American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial 40 (1968). Instead, we have taken a more moderate course, focusing primarily on prevention of prosecutorial delay as a means of implementing the public interest in disposition of criminal charges with reasonable dispatch. Rule 4 provides that "the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge . . . whichever is earliest. *If the government is not ready for trial within such time, or within the periods as extended by the district court for good cause under rule 5, . . . the charge shall be dismissed.*" (Emphasis added). The onus on the prosecution is somewhat alleviated by Rule 5, which authorizes the district court to grant extensions of the six-month period where justified by reason of such circumstances as other "proceedings concerning the defendant," the unavailability of material evidence, the unavailability of the defendant, or "[o]ther periods of delay occasioned by exceptional circumstances." However, the government is put on notice that if it does not comply with the Rules, which provide ample leeway for the legitimate needs of preparing a prosecution, it will be foreclosed from proceeding with the prosecution.

In summary, the Rules are designed to require the government to be ready to try cases promptly, subject to certain types of delay generally recognized as arising from legitimate or unavoidable causes. The purpose of Rule 4 is to insure that regardless whether a defendant has been prejudiced in a given case or his constitutional rights have been infringed, the trial of the charge against

---

with a codefendant as to whom the time for trial has not run and there is good cause for not granting a severance.

. . .

"(f) The period of delay resulting from detention of the defendant in another jurisdiction. . . .

"(g) The period during which the defendant is without counsel for reasons other than the failure of the court to provide counsel for an indigent defendant or the insistence of the defendant on proceeding without counsel.

"(h) Other periods of delay occasioned by exceptional circumstances."

5. The second indictment included three counts. The first two counts were essentially the same as their corresponding number in the first indictment. See note 3 *supra*. The third count charged Turnbull with conspiracy under 21 U.S.C. §§ 846 and 963, in violation of 21 U.S.C. § 841(a)(1) and § 952(a). As to petitioner, Hilbert, the indictments were identical. As to defendant Turnbull, though we need not decide the issue, the addition of a conspiracy count based on essentially the same transaction would not appear to be legally significant for the purpose of determining whether the charge should be dismissed under Rule 4 of the Prompt Disposition Rules.

him will go forward promptly instead of being frustrated by creeping, paralytic procedural delays of the type that have spawned a backlog of thousands of cases, with the public losing confidence in the courts and gaining the impression that federal criminal laws cannot be enforced.

Although Rule 4, in providing that the "charge shall be dismissed" whenever the government is not ready for trial within the six-month period as extended, does not state explicitly that the dismissal shall be "with prejudice," our intent to mandate such a dismissal is readily apparent from the language, purpose and internal logic of the Prompt Disposition Rules. The use of the imperatives "must" and "shall" and of the word "charge" manifest an intent not only that the dismissal be mandatory but that it have a binding effect. If the Council had intended to give district courts the discretionary power to dismiss with or without prejudice, it would have used permissive language of the type found in Rule 48(b) of the F.R.Cr.P., which provides in pertinent part that "[T]he court *may* dismiss the indictment, information or complaint" (emphasis added)[6] and, like F.R.Cr.P. 48, it would have referred to the document containing the charge, i. e., the indictment, rather than use the more inclusive term "charge." Cf. F.R.Cr.P. Rules 3 and 7(c).

Our intent is further manifested by the overall structure of the Prompt Disposition Rules, which specify a gamut of exceptions under which the six-month period could be extended. This detailed and painstaking delineation would have been largely fruitless if the sole sanction for non-compliance were a dismissal which did not preclude reindictment. As the Statement of the Circuit Council to Accompany Second Circuit Rules Regarding Prompt Disposition of Criminal Cases provides:

"The public interest requires disposition of criminal charges with all reasonable dispatch. The deterrence of crime by prompt prosecution of charges is frustrated whenever there is a delay in the disposition of a case which is not required by some good reason. The general observance of law rests largely upon a respect for the process of law enforcement. When the process is slowed down by repeated delays in the disposition of charges for which there is no good reason, public confidence is seriously eroded."

If the government were permitted to reindict after a Rule 4 dismissal, our Prompt Disposition Rules would for the most part be rendered a dead letter, since the government would have less incentive to push forward to trial. Moreover, if reindictment were permitted, the defendant in some instances might actually be placed in a worse position by the Prompt Disposition Rules than if they had not been adopted. Under pre-existing procedures he would continue to face trial in the single pending proceeding, represented by the same trial counsel and having the benefit of expenses incurred for one bail bond and one lawyer. Reindictment, on the other hand, would start a new proceeding, which could result in a second arrest, necessitating the retention of new legal counsel, the posting of a new bond, and other steps, all at a further cost in terms of money, time and psychological distress. *Cf.* Green v. United States, 355 U.S. 184, 187–188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). The instant case is illustrative. Judge Dooling, by permitting reindictment and by finding that Rule 4's six-month period ran from the date of the reindictment, May 30, 1972, in effect allowed the government at least 16 months

6. Rule 48(b) of F.R.Cr.P., dismissal by court, provides:
"If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information, or complaint."

from the date of the original arrest to be ready for trial and concomitantly placed the defendants in the position of risking duplicative expenses and protracted fear not only of the second prosecution but of the possibility of a third case if the court should dismiss the second indictment for failure of the government to be ready according to the Prompt Disposition Rules. Such a result certainly clashes with the underlying purposes of those Rules.

Our view that dismissal without prejudice would seriously undermine the Rules is shared by the American Bar Association's Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, 40–41 (1968), which states "that the only effective remedy for denial of speedy trial is absolute and complete discharge. . . . Prosecutors who are free to commence another prosecution later have not been deterred from undue delay." [7]

The government suggests that the Circuit Council is powerless to promulgate a rule having the effect of mandating dismissal with prejudice because of the government's non-readiness within six months plus such extensions as are granted by the district court. We disagree. Title 28 U.S.C. § 332 provides in pertinent part:

> "Each judicial council shall make all necessary orders for the effective and expeditious administration of the business of the courts within its circuit. The district judges shall promptly carry into effect all orders of the judicial council."

The genesis of § 332 was "an Act to provide for the administration of the United States courts. . . ." Ch. xv,

§ 306, 53 Stat. 1223, 1224 (Aug. 7, 1939).[8] Under the guidance of Chief Justice Groner of the Court of Appeals for the District of Columbia Circuit, a Committee of the Judicial Conference, working with a committee appointed by the Attorney General, drafted the 1939 bill, S. 188, which was subsequently enacted by Congress with minor modifications. Report on the Powers and Responsibilities of the Judicial Councils, H.R.Doc.No.201 at 4, 87th Cong., 2d Sess. (1961) (hereinafter "1961 Report"). That bill was designed to provide the newly established Judicial Councils with the tools needed to deal effectively with such problems as judicial delay. Chief Justice Groner emphasized in his testimony presenting the bill to the Senate Committee on the Judiciary that:

> "[T]he criticism of the *courts is due to delay.* . . .
>
> "Those matters this bill undertakes to provide for by outlining certain duties of the judicial council. Under the present judicial set-up we have no authority to require a district judge to speed up his work or to admonish him that he is not bearing the full and fair burden that he is expected to bear, or to take action as to any other matter which is the subject of criticism. . . .
>
> "The bill also provides what is not now true, that it shall be the duty of the district judges, when admonished or when matters are otherwise brought to his attention by the judicial council, *to take whatever steps are thought to be necessary to correct those things* which ought not to exist in a well run judicial system." S.

---

7. Nothing we have said should be construed as precluding reindictment when there have been extraordinary circumstances such as fraud upon the court in obtaining the dismissal, suppression of evidence by a defendant, or the like, which would warrant an extension of time.

8. For a detailed delineation of the legislative history of 18 U.S.C. § 332, see

Chandler v. Judicial Council, 398 U.S. 74, 89–129, 90 S.Ct. 1648, 26 L.Ed.2d 100 (Harlan, J., concurring). As of the 1948 Amendment, § 332, 62 Stat. 869, 902 (June 25, 1948), the provision was largely in its present form with subsequent amendments limited to language and syntactical modification.

Rep.No.426, 76th Cong., 1st Sess. (1939) (emphasis added).

This statement by one of the principal drafters of the bill, made at a hearing of the Senate Committee which originated the legislation, is entitled to considerable weight. Cf. SEC v. Robert Collier & Co., 76 F.2d 939, 941 (2d Cir. 1935).

The view that the powers of § 332 were intended to be expansive was echoed by Congressman Emanuel Celler, former Chairman of the Committee of the Judiciary of the House, who was a conference committee member and a manager at the time of the original enactment[9] and by a group of distinguished jurists who, after conducting a study of the powers of the Judicial Councils, concluded that "the responsibility of the councils 'for the effective and expeditious administration of the business of the courts within its circuit' extends not merely to the business of the courts in its technical sense (judicial administration), such as the handling and dispatching of cases, but also to the business of the judiciary in its institutional sense (administration of justice), such as the avoiding of any stigma, disrepute, or other element of loss of public esteem and confidence in respect to the court system. . . ."[10] 1961 Report, *supra* at 8–9.

The text of § 332 corroborates the legislative history and purpose of the Act. Former Chief Judge Lumbard accurately characterized the statute when he said "As this language is about as broad as it could possibly be, there is no doubt that Congress meant to give to the coun-

cils the power to do *whatever might be necessary* more efficiently to manage the courts and administer justice," Lumbard, The Place of the Federal Judicial Councils in the Administration of the Courts, 47 A.B.A.J. 169 (1961) (emphasis added). Similarly Chief Justice, then Judge, Burger, deploring the councils' failure to use their powers, noted that § 332 is "all-embracing and confer[s] almost unlimited power. Any problem—whatever it may be—relating to the expeditious and effective administration of justice within the circuit is within the power of the Circuit Judicial Council." Proceedings of the Attorney General's Conference on Court Congestion and Delay in Litigation 58 at 59–60 (1958).

Thus Congress' intent, as manifested by both the language and history of the act, was to give the Councils broad powers to deal with the evil of judicial delay. Our Prompt Disposition Rules, following § 332's mandate, have attempted to attack this problem, with an effective sanction, i.e., dismissal with prejudice for tardy prosecutorial behavior.

Although Rule 4 and Rule 48(b), F.R. Cr.P., deal with the same general subject matter—the court's power to dismiss for delay—we do not find any inconsistency between the two rules. Rule 48(b), which provides for dismissal by the court "[i]f there is unnecessary delay. . . .," is merely a restatement of "the inherent power of the court to dismiss a case for want of prosecution," Committee Note to Rule 48, 8A Moore's Federal Practice

---

9. Congressman Celler stated: "[I] know it was the intention of the Congress to charge the judicial councils of the circuits with the responsibility for doing all and whatever was necessary of an administrative character to maintain efficiency and public confidence in the administration of justice." Forward, 1961 Report, *supra* at v.

10. The Special Committee to study the Powers of the Judicial Councils arose from the September 1960 Judicial Conference.

The Committee consisted of Chief Judge Harvey M. Johnsen of the Eighth Circuit, Chairman; Chief Judge J. Edward Lumbard of the Second Circuit; Circuit Judge Richard T. Rives of the Fifth Circuit; Chief Judge Royce H. Savage of the Northern District of Oklahoma and Chief Judge Roszel C. Thomsen of the District of Maryland. The Judicial Conference, after a few modifications, adopted the report at its session of March 13–14, 1961.

¶ 48.01. Dismissal under Rule 48 may be without prejudice, see, e.g., Mann v. United States, 113 U.S.App.D.C. 27, 304 F.2d 394, cert. denied, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962)—or it may be with prejudice, see, White v. United States, 126 U.S.App.D.C. 309, 377 F.2d 948 (1967)—indeed it must be with prejudice where it is on Sixth Amendment grounds or where prosecution is barred by the statute of limitations. Our Speedy Trial Rules merely flesh out the skeleton of Rule 48, giving content to the sweeping phrase "unnecessary delay" by substituting a more precise, albeit still flexible, six-month rule. Having spelled out in detail the conditions for dismissal with prejudice, the need for discretionary power to dismiss without prejudice ceases to exist where such conditions are met.

Nor does Rule 4 deprive the district court of discretion except under circumstances where, in the Council's opinion, it would be an abuse of discretion not to dismiss with prejudice. The district court retains the power to determine in its discretion whether the period within which the government must be ready should be extended beyond six months for any one or more of the reasons specified in Rule 5; and pursuant to Rule 48(b) the district judge may still decide that unless the government in exceptional cases is ready to proceed to trial in less than six months, the indictment will be dismissed without prejudice to reindictment. Thus nothing in Rule 48(b) implies that it is the exclusive source of the court's power to dismiss an indictment because of delay or that it precludes mandatory dismissal with prejudice under specified circumstances. Indeed, dismissal with prejudice is required by the Sixth Amendment where the delay is of constitutional proportions. Rule 48(b), therefore, merely confirms the court's general power in the area.

The cases suggesting a contrary conclusion are distinguishable and do not rule out discretionary dismissals with prejudice under circumstances falling short of constitutional or statute of limitation infirmities. In Mann v. United States, 113 U.S.App.D.C. 27, 304 F.2d 394, cert. denied, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962), the government itself raised the possibility of a dismissal (which suggests that the dismissal was pursuant to Rule 48(a) [11] not Rule 48(b)), and as most of the delay was of the defendant's "own making," the trial court "clearly expressed its intent to award the dismissal without prejudice to further prosecution should the government later uncover the missing evidence." 304 F.2d at 397. See United States v. Chase, 372 F.2d 453, 463–464 (4th Cir.), cert. denied, 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626 (1967), which also arose under Rule 48(a). Although some of the language in United States v. Apex Distributing Co., 270 F.2d 747, 750–751 (9th Cir. 1959) (*en banc*), where dismissal was based on the government's failure to comply with pretrial discovery orders, appears to reject dismissal with prejudice except in instances when reindictment is barred by the statute of limitations (or, presumably, by the Sixth Amendment) the context is entirely distinguishable since the court there had no occasion to consider the effect of detailed rules of the type here under consideration, which give the government fair and reasonable notice of the consequences of its non-readiness. Although Chief Judge Friendly in United States v. DiStefano, 464 F.2d 845 (2d Cir. 1972), which held that the dismissal of the in-

---

11. Rule 48(a) of the F.R.Cr.P. which deals with dismissals by the attorney for the government provides:

"The Attorney General or the United States Attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."

dictment there pursuant to Rule 48(b) was not appealable by the government under a specific jurisdictional statute, stated that the dismissal did not "bar" another prosecution, it does not appear that the district court had purported to dismiss with prejudice. Furthermore the court found "nothing in the colloquy to suggest" that the dismissal was pursuant to Rule 4 of our detailed Prompt Disposition Rules, which is the issue here under consideration.

There remains the question of whether mandamus is the appropriate form of relief.[12] We conclude that it is. "The peremptory writ of mandamus has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' Roche v. Evaporated Milk Assn., 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943)." Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967); see De-Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945); United States v. Dooling, 406 F.2d 192 (2d Cir.), cert. denied, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969); United States v. Weinstein, 452 F.2d 704 (2d Cir. 1971), cert. denied, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972); cf. Note, Supervisory and Advisory Mandamus Under the All Writs Act, 86 Harv.L.Rev. 595, 622 (1973). As we have found that Rule 4 of our Prompt Disposition Rules mandates dismissal with prejudice, the district judge was without power to deny the motion to dismiss the second indictment. Unlike the situation in Will v. United States, *supra*, where mandamus sought by the government was denied, the Court noting that the delay occasioned by piecemeal review could af-

fect "the constitutional precepts that a man is entitled to a speedy trial and that he may not be placed twice in jeopardy for the same offense," 389 U.S. at 98, here the denial of the writ, by allowing the second indictment to stand, would jeopardize these important rights.

The petition for writ of mandamus is granted and the district court is directed to dismiss with prejudice the second indictment of the petitioner.

FRIENDLY, Chief Judge (dissenting):

However desirable the result reached by the majority may be from a policy standpoint, I cannot agree that either 28 U.S.C. § 332 or the inherent supervisory power of a court of appeals authorizes a judicial council to direct by rule how a district judge shall exercise his discretion in determining whether dismissal of an indictment shall be with or without prejudice. The legislative history of § 332, recited in my brother MANSFIELD's excellent opinion, has an import to me just the opposite of what it has to the majority. I agree that § 332 gives the judicial council a plenitude of powers with respect to the administration of the district courts, not only over the work of individual judges but over the courts themselves. However, Chief Justice Groner's reference to the then lack of authority "to require a district judge to speed up his work or to admonish him that he is not bearing the full and fair burden that he is expected to bear, or to take action as to any other matter which is the subject of criticism" cannot fairly be expanded, without unduly defying the principle of *ejusdem generis*, to telling a district judge that he must invariably exercise his judicial discretion with respect to the effect of the dismissal of an indictment in a par-

12. Title 28, § 1651(a) provides:
"The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

ticular way. The majority's reading also seems to me to put more weight on the very general remarks of Representative Celler, twenty-two years after § 332 was enacted, than they can fairly bear. The action of our Judicial Council in fleshing out F.R.Cr.P. 48(b) by giving specific content to the phrase "unnecessary delay" seems to me to have gone to the verge of its power under § 332. I can find no basis for taking the further step of holding that Congress meant to empower a judicial council to adopt a rule that would withdraw the district judge's discretion, admittedly afforded by Rule 48(b), to dismiss either with or without prejudice as he deemed appropriate. While refusal to dismiss with prejudice in a particular case may be an abuse of discretion, the remedy for this is not mandamus, Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), but appeal from a conviction on a new indictment if conviction there would be.

I should have written in greater depth save for the fact that, with the adoption of F.R.Cr.P. 50(b) and of district court rules for the prompt disposition of criminal cases thereunder, the power of the Judicial Council to direct dismissal with prejudice for violation of its Rules for the Prompt Disposition of Criminal Cases will now be academic for the future. Rule 50(b) clearly empowers a district court, with the approval of the reviewing panel, to provide that dismissal shall be with prejudice, as has now been done. However, it is worth noting that Rule 4 of the district court rules which have been approved in our circuit, see fn. 2 to the majority opinion, affords a measure of flexibility not contained in the Second Circuit Rules for the Prompt Disposition of Criminal Cases, which, having well served the important purpose that led to their adoption, have now been repealed on the effective date of the new district court rules.

I would deny the writ.