**UNITED STATES of America,**
**Appellant,**

v.

**Andrew FUREY, Appellee.**

**No. 467, Docket 74-2266.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 22, 1974.

Decided Feb. 25, 1975.

As Amended April 7, 1975.

---

* Of the Southern District of New York, sitting by designation.

Edward R. Korman, Chief Asst. U. S.
Atty. (David G. Trager, U. S. Atty., E.
D. N. Y., Brooklyn, N. Y., of counsel),
for appellant.

James M. Furey, Hempstead, N. Y.
(Furey & Mooney, Hempstead, N. Y., of
counsel), for appellee.

Before SMITH, HAYS and MANS-
FIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

The single issue raised by this appeal
is the validity of the dismissal-with-prej-
udice sanction of Rule 4 of the Eastern

District Plan for the Prompt Disposition of Criminal Cases (the "Plan").[1] The government challenges (1) the power of the Judicial Branch to promulgate a rule requiring such a sanction, and (2) the validity of Rule 50(b), F.R.Cr.P.,[2] which required the district court to adopt such a plan. It also urges that Rule 50(b) does not authorize the sanction of dismissal with prejudice. Rejecting these arguments, the district court upheld the Rule and dismissed the information in this case on its authority. We affirm.

This is the second time that this case has been before this Court with regard to the application of the Plan. Upon an earlier appeal by defendant Andrew Furey, who had been adjudicated a juvenile delinquent, see 18 U.S.C. § 5031 et seq., we vacated the judgment of conviction originally entered by the Eastern District of New York, holding that under the Plan the information must be dismissed for failure of the government to file a notice of readiness within six months unless the government's neglect to do so was "excusable," which would, under Rule 4, enable the government to avoid dismissal, provided it was ready to proceed to trial within 10 days. We remanded the case to the district court to determine whether the neglect was excusable. United States v. Furey, 500 F.2d 338 (2d Cir. 1974). Upon remand Judge Dooling, after a hearing, concluded that the neglect, while understandable, was not excusable and on August 26, 1974, a judgment was accordingly entered granting Furey's motion to dismiss the information with prejudice for failure to comply with Rule 4, from which the government appeals.

---

1. Rule 4 provides:

 *"All Cases: Trial Readiness and Effect of Non-Compliance.*

 "In all cases the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest. If the government is not ready for trial within such time, and if the defendant is charged only with non-capital offenses, the defendant may move in writing, on at least ten days' notice to the government, for dismissal of the indictment. Any such motion shall be decided with utmost promptness. If it should appear that sufficient grounds existed for tolling any portion of the six-months period under one or more of the exceptions in Rule 5, the motion shall be denied, whether or not the government has previously requested a continuance. Otherwise the court shall enter an order dismissing the indictment with prejudice unless the court finds that the government's neglect is excusable, in which event the dismissal shall not be effective if the government is ready to proceed to trial within ten days."

2. Rule 50(b) provides:

 *"Plan for Achieving Prompt Disposition of Criminal Cases.* To minimize undue delay and to further the prompt disposition of criminal cases, each district court shall conduct a continuing study of the administration of criminal justice in the district court and before United States magistrates of the district and shall prepare a plan for the prompt disposition of criminal cases which shall include rules relating to time limits within which procedures prior to trial, the trial itself, and sentencing must take place, means of reporting the status of cases, and such other matters as are necessary or proper to minimize delay and facilitate the prompt disposition of such cases. The district plan shall include special provision for the prompt disposition of any case in which it appears to the court that there is reason to believe that the pretrial liberty of a particular defendant who is in custody or released pursuant to Rule 46, poses a danger to himself, to any other person, or to the community. The district plan shall be submitted for approval to a reviewing panel consisting of the members of the judicial council of the circuit and either the chief judge of the district court whose plan is being reviewed or such other active judge of that court as the chief judge of the district court may designate. If approved the plan shall be forwarded to the Administrative Office of the United States Courts, which office shall report annually on the operation of such plans to the Judicial Conference of the United States. The district court may modify the plan at any time with the approval of the reviewing panel. It shall modify the plan when directed to do so by the reviewing panel or the Judicial Conference of the United States. Each district court shall submit its plan to the reviewing panel not later than 90 days from the effective date of this rule."

In accordance with the requirements of Rule 50(b) the Eastern District Plan was adopted by the judges of the United States District Court for the Eastern District of New York and approved by the Second Circuit Judicial Council, effective April 1, 1973, as a means of minimizing undue delay and furthering the prompt disposition of criminal cases. Under the Plan these objectives were to be accomplished primarily through the prescription of strict time periods within which criminal cases must be prepared by the government for trial. Like the earlier Second Circuit Rules Regarding Prompt Disposition of Criminal Cases, after which it was modeled, see United States v. Furey, *supra,* 500 F.2d at 340 n. 1, the Plan did not mandate trial within a certain time period, but instead aimed to achieve its goal by concentrating on "prosecutorial delay as a means of implementing the public interest in disposition of criminal charges with reasonable dispatch," Hilbert v. Dooling, 476 F.2d 355, 357 (2d Cir.) (*en banc*), cert. denied, 414 U.S. 878, 94 S.Ct. 56, 38 L.Ed.2d 123 (1973). It was substantially the same as all other such plans adopted by the district courts within the Second Circuit, being almost an exact copy of the Model Plan drafted by the Circuit Council of the Second Circuit. Since the events giving rise to the present appeal all occurred prior to the enactment of the Speedy Trial Act of 1974, P.L.No. 93–619 (Jan. 3, 1975), 1974 U. S. Code Congressional and Administrative News, p. 2407, which is not retroactive, the Plan governs the instant proceeding, cf. 1 U.S.C. § 109; United States v. Fiotto, 454 F.2d 252 (2d Cir.), cert. denied, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972). We need not consider the effect of the Speedy Trial Act on the continued applicability of the present Plan.

Rule 4 (like Rule 4 of the Second Circuit Model Plan) is the heart of the scheme, requiring the government to "be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest." If the government should fail to meet this deadline, and if the offenses charged were non-capital, the defendant could obtain a dismissal of "the indictment with prejudice unless the court finds that the government's neglect is excusable, in which event the dismissal shall not be effective if the government is ready to proceed to trial within ten days." The Plan also provides for the exclusion of certain periods from the six-month limit, thus relieving the government of responsibility for delays not within its control.[3]

---

**3.** Rule 5 of the Eastern District Plan tolls the six-month period in various circumstances:

*"Excluded Periods.*

"In computing the time within which the government should be ready for trial under Rules 3 and 4, the following periods should be excluded:

"(a) The period of delay while proceedings concerning the defendant are pending, including but not limited to proceedings for the determination of competency and the period during which he is incompetent to stand trial, pre-trial motions, interlocutory appeals, trial of other charges, and the period during which such matters are sub judice.

"(b) Periods of delay resulting from a continuance granted by the District Court at the request of, or with the consent of, the defendant or his counsel, in writing or stated upon the record. The District Court shall grant such a continuance only if it is satisfied that postponement is in the interest of justice, taking into account the public interest in the prompt disposition of criminal charges. A defendant without counsel should not be deemed to have consented to a continuance unless he has been advised by the court of his rights under these rules and the effect of his consent.

"(c) The period of time during which:

"(i) evidence material to the government's case is unavailable, when the prosecuting attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will become available within a reasonable period; or

"(ii) the prosecuting attorney is actively preparing the government's case for trial and additional time is justified by exceptional circumstances of the case.

"(d) The period of delay resulting from the absence or unavailability of the defend-

Furey first contends that consideration of the validity of Rule 4 is precluded by the limited terms of our earlier remand and by our earlier decision which, he argues, impliedly upheld the Plan and thus constitutes the law of the case. We disagree. Although we directed the district court to consider and rule on certain issues, United States v. Furey, *supra,* 500 F.2d at 344, we did not limit it to those questions. The district court on remand and this Court on further appeal are free to consider any issue not clearly foreclosed by our previous opinion especially where, as here, the new issue is one that was not presented and was not necessary to the disposition of the earlier appeal. Our previous decision constitutes the law of the case only as to those issues specifically presented to and decided by the Court on that appeal. See, e. g., Cataphote Corp. v. Hudson, 422 F.2d 1290, 1296 (5th Cir. 1970); Salvoni v. Pilson, 86 U.S.App.D.C. 227, 181 F.2d 615, 619, cert. denied, 399 U.S. 981, 70 S.Ct. 1030, 94 L.Ed. 1385 (1950); Connett v. City of Jerseyville, 110 F.2d 1015, 1018 (7th Cir. 1940). Since the validity of Rule 4 does not fall within that category, we are free now to resolve that issue.[4]

As the government concedes, the federal courts have long had the power to dismiss indictments for unexcusable delay by the government in prosecution. This authority stems from two independent historical sources and its exercise is governed by different standards, depending upon the origin. The primary source is, of course, the Sixth Amendment which guarantees to all persons a speedy trial. That guarantee is intended to prevent prejudice to the "defendant's ability to present an effective defense," United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). It also protects the accused from the emotional distress that results from "uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving—uncertainties that a prompt trial removes," Strunk v. United States, 412 U.S. 434, 439, 93 S.Ct. 2260, 2263, 37 L.Ed.2d 56 (1973). Once there has been a determination, after consideration of the factors prescribed by the Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), that a defendant's Sixth Amendment right to a speedy trial has been denied, the remedy invariably is dismiss-

ant. A defendant should be considered absent whenever his location is unknown. A defendant should be considered unavailable whenever his location is known but his presence for trial cannot be obtained by due diligence.

"(e) A reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and there is good cause for not granting a severance. In all other cases the defendant should be granted a severance so that he may be tried within the time limits applicable to his case.

"(f) The period of delay resulting from detention of the defendant in another jurisdiction provided the prosecuting attorney has been diligent and has made reasonable efforts to obtain the presence of the defendant for trial.

"(g) The period during which the defendant is without counsel for reasons other than the failure of the court to provide counsel for an indigent defendant or the insistence of the defendant on proceeding without counsel.

"(h) Other period of delay occasioned by exceptional circumstances."

4. Although this Court has had many occasions to review the application of the Eastern District Plan, e. g., United States v. McDonough, 504 F.2d 67 (2d Cir. 1974); United States v. Flores, 501 F.2d 1356 (2d Cir. 1974); United States v. Bowman, 493 F.2d 594 (2d Cir. 1974); United States v. Pollak, 474 F.2d 828 (2d Cir. 1973); United States v. Valot, 473 F.2d 667 (2d Cir. 1973), the validity of Rule 4 has never previously been questioned. Naturally, these earlier decisions upholding dismissal under Rule 4 do not foreclose our consideration of that issue now.

We also do not consider this Court's decision in Hilbert v. Dooling, *supra,* upholding dismissal with prejudice under the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases to be controlling here, despite suggestions that decisions involving the Second Circuit Rules are generally applicable to this and similar Plans, e. g., United States v. Furey, *supra,* 500 F.2d at 340 n. 1; United States v. Bowman, *supra,* 493 F.2d at 595–96 n. 3, because that decision relied upon supervisory and statutory powers of the Circuit Courts not present in this case.

al of the charges or indictment with prejudice, e. g., Strunk v. United States, *supra,* 412 U.S. at 439–40, 93 S.Ct. 2260; United States v. Provoo, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (*per curiam*), aff'g Petition of Provoo, 17 F.R.D. 183 (D.Md.1955), which bars any further prosecution.

■ The federal courts also possess the inherent power, derived from the common law, to dismiss a case for want of prosecution, whether or not there has been a Sixth Amendment violation, e. g., Mann v. United States, 113 U.S.App.D.C. 27, 304 F.2d 394, cert. denied, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962); District of Columbia v. Weams, 208 A.2d 617 (D.C.Mun.App.1965); Ex parte Altman, 34 F.Supp. 106 (S.D.Cal.1940); cf. United States v. Cartano, 420 F.2d 362, 363 (1st Cir. 1969), cert. denied, 397 U.S. 1054, 90 S.Ct. 1398, 25 L.Ed.2d 671 (1970); Mathies v. United States, 126 U.S.App.D.C. 98, 374 F.2d 312, 314–15 (1967). Restated in Rule 48(b), F.R. Cr.P., see Advisory Committee Notes to Rule 48, 8A Moore's Federal Practice ¶ 48.01, this power is independent of Sixth Amendment considerations, being an outgrowth of the court's supervisory authority with respect to its own jurisdiction. Its exercise has traditionally been within the court's discretion, United States v. Aberson, 419 F.2d 820 (2d Cir.), cert. denied, 397 U.S. 1066, 90 S.Ct. 1497, 25 L.Ed.2d 687 (1970). It has been used, for instance, to relieve the defendant of hardship occasioned by the government's attempts to marshall its case for prosecution after unforeseen delay, Mann v. United States, *supra;* District of Columbia v. Weams, *supra,* and to protect the public interest "in the prosecution of those accused of crime without the procrastination of which the processes of law are sometimes guilty," United States v. Mark II Electronics of Louisiana, Inc., 283 F.Supp. 280, 283 (E.D.La.1968), which a prompt trial facilitates by preserving the proof, maximizing the deterrent effect of the prosecution, and minimizing the risk that pending trial the accused may commit other crimes, flee or threaten witnesses, ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, Approved Draft, 1968, 10–11. Dismissal under this power may be without prejudice, e. g., Cohen v. United States, 366 F.2d 363 (9th Cir. 1966), cert. denied, 385 U.S. 1035, 87 S.Ct. 771, 17 L.Ed.2d 682 (1967); Mann v. United States, *supra,* or with prejudice, White v. United States, 126 U.S.App.D.C. 309, 377 F.2d 948 (1967); District of Columbia v. Weams, *supra;* 3 Wright, Federal Practice and Procedure § 814, at 319 (1969).

Cases cited by the government for the proposition that dismissal with prejudice is proper only when the Sixth Amendment is invoked are not only distinguishable but do not support such a rule. In Cohen v. United States, *supra,* it was never decided whether dismissal with prejudice is permissible. Rather, the main issue faced by the court was whether dismissal for non-prosecution could ever be without prejudice. That issue was decided affirmatively and reindictment was permitted, since the trial judge clearly "contemplated the possibility of a new indictment, because of his specific reference to 'any subsequently returned indictment against the defendant.'" 366 F.2d at 367. The same is true of Mann v. United States, *supra.* See Hilbert v. Dooling, *supra,* 476 F.2d at 361. United States v. Mark II Electronics of Louisiana, Inc., *supra,* superficially appears to support the government's position with the statement that "dismissal of an indictment on nonconstitutional grounds under Rule 48(b) does not preclude reindictment." 283 F.Supp. at 284. It appears to us, however, that the court meant only that the character of the dismissal (with or without prejudice) is within the trial court's discretion, as it cited Mann v. United States, *supra,* which, as we have noted, held only that dismissal without prejudice is permissible and not that it is the only form of dismissal possible. Finally, United States v. DiStefano, 464 F.2d 845 (2d Cir. 1972); United States v. Chase, 372 F.2d 453 (4th Cir.), cert. denied, 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626 (1967); and United States v. Apex Distributing Co., 270 F.2d

747 (9th Cir. 1959) (*en banc*), are distinguishable on similar grounds. Hilbert v. Dooling, *supra,* 476 F.2d at 361–62.

 Since it is within the court's inherent power to dismiss a prosecution with prejudice for prosecutorial delay not rising to constitutional dimensions, the district court surely may adopt a rule governing the exercise of that power. The Eastern District Plan thus constitutes no substantive change in the law. It simply regulates the exercise of the court's power over its own jurisdiction. While the Plan was partially intended to further the public interest by ending procedural delays attributable to immense court backlogs undermining public confidence in the courts, see Advisory Committee Notes to Rule 50(b), F.R.Cr.P., Rule 50(b), 18 U.S.C.A. (Supp. 1975), we see no reason why the courts cannot exercise their existing supervisory powers to remedy such a crisis of confidence. It is not at all uncommon for litigants to lose their rights irretrievably because of their failure to adhere to court-created rules, e. g., Rules 37(b) and 41(b), F.R.Civ.P., which are designed not to protect rights of litigants but to facilitate the prompt processing of litigation, see Sibbach v. Wilson & Co., 312 U.S. 1,

61 S.Ct. 422, 85 L.Ed. 479 (1941). Thus the dismissal remedy cannot be denominated substantive merely because it can operate to cut off the right of the government to prosecute. Furthermore, the adoption of such a rule is not a matter resting exclusively within Congress' jurisdiction merely because it involves a policy determination that might also have been made by Congress. Regardless whether the rule is labelled "legislative" or "judicial," Congress and the federal courts have concurrent power over matters of practice and procedure, see 28 U.S.C. § 2071.[5]

 The second prong of the government's attack is aimed at the validity of Rule 50(b) itself, which requires the adoption of a plan for the prompt disposition of criminal cases. The contention is that this is not a rule of "pleading, practice and procedure" within the meaning of 18 U.S.C. § 3771,[6] but an improper delegation of the Supreme Court's rulemaking power and an unlawful attempt by the district courts to avoid essential Congressional review in the adoption of procedural rules. The government, however, misunderstands the import of Rule 50(b). It in no way delegates the Supreme Court's rulemak-

---

**5.** 28 U.S.C. § 2071 provides:

> *"Rule-making power generally*
> "The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court."

When § 2071 was revised by Congress in 1948 the Reviser's Notes carried the following pertinent paragraph:

> "Recognition by Congress of the broad rule-making power of the courts will make it possible for the courts to prescribe complete and uniform modes of procedure, and alleviate, at least in part, the necessity of searching in two places, namely in the Acts of Congress and in the rules of the courts, for procedural requisites."

U.S.Code Congressional Service, 80th Cong., 2d Sess., 5 Legislative History of Title 28, at 1896 (1948).

**6.** 18 U.S.C. § 3771 provides:

> *"Procedure to and including verdict*
> "The Supreme Court of the United States shall have the power to prescribe, from

time to time, rules of pleading, practice, and procedure with respect to any or all proceedings prior to and including verdict, or finding of guilty or not guilty by the court if a jury has been waived, or plea of guilty, in criminal cases and proceedings to punish for criminal contempt of court in the United States district courts, in the district courts for the District of the Canal Zone and the Virgin Islands, in the Supreme Court of Puerto Rico, and in proceedings before United States magistrates. Such rules shall not take effect until they have been reported to Congress by the Chief Justice at or after the beginning of a regular session thereof but not later than the first day of May, and until the expiration of ninety days after they have been thus reported. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

> "Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court."

ing power to the district courts. Nor does it circumvent Congressional review of rules adopted under § 3771. Instead, it merely controls and coordinates within a specific area (prompt disposition of criminal cases) the existing rulemaking power of the district courts, which does not depend on § 3771 but is derived independently from 28 U.S.C. § 2071. That statute empowers the district courts to prescribe rules for the conduct of their business and requires that these rules be consistent with rules promulgated by the Supreme Court. Such plans (including Rule 4) being within the authority of the district courts, the Supreme Court, acting in its supervisory capacity, had the power to direct that they be promulgated in order to "eliminate technicalities and delays in criminal cases." [7]

When Rule 50(b) was submitted for Congress' consideration (and possible veto) prior to its becoming effective, Congress was clearly confronted with the issue of whether the rule conformed to the requirements of § 3771. That Congress was well aware of its own powers in the matter is attested to by its recent rejection of the Proposed Federal Rules of Evidence, P.L. No. 93–12 (Mar. 30, 1973), 1973 U.S.Code Congressional and Administrative News 11. Yet, despite ample opportunity to invalidate Rule 50(b) as failing to meet the requirements of § 3771, Congress chose to remain eloquently silent, permitting the rule to become effective. In these circumstances the words of the Supreme Court with regard to the Federal Rules of Civil Procedure in Sibbach v. Wilson & Co., *supra,* 312 U.S. at 15, 61 S.Ct. at 427, are apposite:

"The value of the reservation of the power to examine proposed rules, laws and regulations before they become effective is well understood by Congress. It is frequently . . . employed to make sure that the action under the delegation squares with the Congressional purpose. Evidently the Congress felt the rule was within the am-

bit of the statute as no effort was made to eliminate it from the proposed body of rules . . . ." (Footnote omitted).

As the government has failed to carry the heavy burden of upsetting a rule adopted pursuant to § 3771, cf. Hanna v. Plumer, 380 U.S. 460, 471, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), we are persuaded by Congress' implicit approval of Rule 50(b).

■ The final argument raised against Rule 4 is that Rule 50(b) was not intended to authorize the adoption of the sanction of dismissal with prejudice. The government cites early drafts of Rule 50(b) and the Model Plan circulated by the Administrative Office of the United States Courts, neither of which included this sanction, as evidence of the intent of the rule drafters. The answer is that Rule 50(b) does not give the district courts any powers that they do not already possess either under common law (inherent power to dismiss with prejudice) or under § 2071 (power to make their own rules). It simply mandates that these powers be exercised to achieve a specific goal. It does not tell them which powers to exercise or how to exercise any particular powers. Whether the drafters of Rule 50(b) envisioned the use of dismissal with prejudice as a sanction is not relevant so long as the rule does not preclude the district courts from exercising that power. There is no indication that Rule 50(b) was so intended.

Moreover, we find it difficult to imagine drafting an effective Plan for the Prompt Disposition of Criminal Cases without the sanction of dismissal with prejudice. Such a provision is, in our view, necessary to put teeth into the scheme, see Hilbert v. Dooling, *supra,* 476 F.2d at 358–59. If the government prosecutor is not faced with complete and absolute discharge of the defendant upon failure to diligently prosecute, he will be less likely to live up to the spirit and letter of the Plan, see ABA Project

---

7. This is one of the purposes cited by Congress in giving the Supreme Court the rulemaking power contained in § 3771. S.Rep.

No.1934, 76th Cong., 3d Sess. 2 (1940); H.R. Rep.No.2492, 76th Cong., 3d Sess. 2 (1940).

**1106**

on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, Approved Draft, 1968, 40–41. Additionally, the defendant may suffer more from dismissal and reindictment than from one continuing indictment (albeit for a long period). Reindictment may necessitate retaining new counsel, duplication of legal and investigative effort and may occupy more of the defendant's time, all at increased cost in terms of money and psychological strain. In view of these considerations, we do not believe that Rule 50(b) was intended to limit or prevent the use of dismissal with prejudice, if the district court in question found that this sanction was necessary for the effectiveness of its plan.

Our interpretation of Rule 50(b) as not precluding dismissal with prejudice is consistent with the provisions of the recently-enacted Speedy Trial Act of 1974, which set substantially shorter time limits for prosecution of federal crimes than those contained in the Eastern District Plan and imposes severe sanctions, including dismissal with prejudice, if those limits are exceeded.

The judgment of the district court dismissing the information is affirmed.