**UNITED STATES of America,**
**Appellee,**

v.

**Gamey BOWMAN, Appellant.**

**No. 585, Docket 73-2335.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 19, 1973.

Decided Feb. 25, 1974.

John D. Gordan, III, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., S. Andrew Schaffer, Asst. U. S. Atty., New York City, of counsel), for appellee.

William Epstein, The Legal Aid Society, New York City (William Gallagher, Federal Defender Services Unit, New York City, of counsel), for appellant.

Before FRIENDLY, MANSFIELD and OAKES, Circuit Judges.

MANSFIELD, Circuit Judge:

Once again we are asked to reverse a criminal conviction because of the government's failure to comply with a local rule for the prompt disposition of criminal cases. See, e. g., United States v. Masullo, 489 F.2d 217 (2d Cir. 1973); United States v. Pollak, 474 F.2d 828

(2d Cir. 1973); United States v. Valot, 473 F.2d 667 (2d Cir. 1973); United States v. Counts, 471 F.2d 422 (2d Cir. 1973). Appellant, Gamey Bowman, was on August 8, 1973 convicted, after a two-day trial before Judge Arnold Bauman and a jury in the Southern District of New York, of conspiracy to distribute narcotics in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A) (1972). Bowman was sentenced as a youth offender to a probationary term of three years pursuant to 18 U.S.C. § 5010(a). Because in this instance the government's failure to comply with Rule 4 of the Southern District's Plan for Achieving Prompt Disposition of Criminal Cases ("the Plan") was due to "excusable neglect" within the meaning of that Rule, we affirm.

Rule 4, which became effective on April 1, 1973, establishes a "six-months rule" whereby the government is required to be ready for a trial within six months from the date of the defendant's "arrest, service of summons, detention, or the filing of a complaint . . . whichever is earliest." [1] If the government fails to be ready for trial within the six-month period, the defendant may have the indictment against him dismissed unless the indictment charges him with a capital offense, or unless "the court finds that the (government's) neglect is excusable. . . . " Under Rule 5(h) of the Plan the six-month period specified in Rule 4 does not include periods of delay "occasioned by exceptional circumstances."

Bowman was arrested on drug charges on November 16, 1972. On May 8, 1973, an indictment was returned against him by a grand jury in the Southern District. On May 9, 1973, the government filed with the Clerk of the Southern District a notice of its readiness for trial. Pursuant to Rule 7(A) of the local calendaring rules,[2] however, Bowman was not arraigned and did not enter his plea to the indictment until May 21, 1973, which was the second Monday following the filing of the indictment and which was also five days after expiration of the six-month period following Bowman's arrest. Since the six-month period specified by Rule 4 of the Plan had elapsed before his plea was entered, Bowman, relying on our decision in United States v. Valot, 473 F.2d 667 (2d Cir. 1973), moved on June 4, 1973 for dismissal of the indictment.

In Valot, which was decided under the Second Circuit's Prompt Disposition Rules in effect before the Southern District's Plan was adopted and which contained a similar six-month rule,[3] the

---

1. "(4) All Cases: Trial Readiness and Effect of Non-Compliance. In all cases the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest. If the government is not ready for trial within such time, and if the defendant is charged only with non-capital offenses, the defendant may move in writing, on at least ten days' notice to the government, for dismissal of the indictment. Any such motion shall be decided with utmost promptness. If it should appear that sufficient grounds existed for tolling any portion of the six-months period under one or more of the exceptions in Rule 5, the motion shall be denied, whether or not the government has previously requested a continuance. Otherwise the court shall enter an order dismissing the indictment with prejudice unless the court finds that the government's neglect is excusable, in which event the dismissal shall not be effective if the government is ready to proceed to trial within ten days."

2. "Rule 7. Pleading and Assignment of Criminal Actions. (A) Calendaring of Pleas All criminal actions instituted by an indictment shall be placed upon the criminal calendar of Part I for pleading on the second Monday following the filing of the indictment. If the matter is instituted by waiver of indictment and the filing of an information, the action shall be placed on the Monday calendar for waiver and pleading."

3. The Second Circuit's Rules were in effect until they were superseded by Plans for each of the six districts within the Circuit. Since the Southern District's Plan adopted many of the Second Circuit's Rules—including Rules 4 and 5(h)—almost verbatim,

timing of the chain of events leading up to entry of the defendant's plea was substantially the same as that presented here. There, as here, the government obtained the indictment and filed its notice of readiness shortly prior to expiration of the six-month period from the arrest and the plea was entered five days after that period had elapsed. Because the district court, in denying Valot's motion to dismiss the indictment for failure of the government to comply with the Prompt Disposition Rules, had failed to make findings, we remanded the conviction to it for the purpose of making findings on the subject of whether dismissal was required by those Rules. On this subject we stated: "Here, as in *Scafo,* 470 F.2d 748 (2 Cir.), no findings of fact were made as to what actually occurred, including the reasons for the delay or delays and whether they were 'occasioned by exceptional circumstances'. Rule 5(h) of the Second Circuit Rules." 473 F.2d at 668. In support of his motion in the present case Bowman contended that *Valot* must be construed as holding that a notice of readiness filed prior to entry of a plea be disregarded and that absent a showing of "exceptional circumstances" under Rule 5(h) of the Plan an indictment which is not filed sufficiently in advance of the expiration of the six-month period to enable a defendant to plead within that period, after scheduling in accordance with Rule 7 of the local calendar rules, must be dismissed.

Before ruling on the question of whether dismissal was mandated by *Valot,* Judge Bauman on June 22, 1973, held a hearing to determine whether there were any periods of delay caused by "exceptional circumstances" which, under Rule 5(h) of the Plan, would be excluded in his computation of the six-month period from the date of defendant's arrest, or whether the government's alleged failure to comply with the six-

month rule was due to "excusable neglect." The evidence revealed that during much of the time between appellant's arrest and indictment the United States Attorney's Office was in a state of transition between the administrations of Whitney North Seymour, Jr. and Paul J. Curran. Its criminal division and its narcotics unit were seriously understaffed.[4] Assistant United States Attorney John Sabetta was not assigned to the case until February 7, 1973, after one other assistant in charge of it had been transferred out of the unit and another assistant subsequently assigned to the case had resigned from the office. When Sabetta was assigned to the case, other matters, including a complicated and lengthy conspiracy trial, demanded his complete attention until early April when, because of physical exhaustion, he took a week's vacation. Upon his return he prepared the case against appellant and presented it to the grand jury sitting in the Southern District on May 8, 1973. Sabetta conceded that he would have presented the case to the grand jury in time to allow appellant to plead to the indictment (pursuant to the Southern District's scheduling rules) within six months from the date of appellant's arrest had he been aware of this court's decision in the *Valot* case. However, he was not aware of this decision at the time. This oversight was compounded by a temporary breakdown in the practice normally followed by the United States Attorney's case control unit of sending out time advance warnings of the six-month expiration date in each case. The breakdown occurred because of confusion and "certain personnel changes" taking place within the unit.

At the close of the hearing Judge Bauman ruled that, in light of our decision in *Valot,* proper compliance with Rule 4 of the Plan required the filing of an indictment in time to allow the de-

court decisions dealing with the Rules are for the most part applicable here. See United States v. Lasker, 481 F.2d 229, 232 n. 2 (2d Cir. 1973).

4. The narcotics unit was approximately two men short and the criminal division was approximately eight men short.

fendant to plead to it and the government then to file its notice of readiness within six months from the date of the defendant's arrest. Judge Bauman declined to characterize the prosecutor's delay in this case as "neglect." However, he found that the circumstances existing within the United States Attorney's office prior to the filing of the indictment were "exceptional" within the meaning of Rule 5(h) of the Plan and thus periods of resulting delay should be excluded in computing the six-month period. Based on this finding Judge Bauman denied appellant's motion to dismiss.

*Discussion*

■ Although our short per curiam in *Valot* did not make completely clear the full import of the remand in that case, we agree that it was correctly interpreted by Judge Bauman. Our purpose was to insure that the government would file its notice of readiness only after pleading and that, absent exceptional circumstances permitting an extension of time pursuant to Rule 5(h), this must be done within the six-month period following arrest, after excluding any other periods as authorized by Rule 5. Even though the government might be ready to go to trial at an earlier date, its readiness could not become effective as a practical matter until issue had been joined, whereupon the case could be assigned to a judge for all purposes, including the disposition of pretrial motions and the conduct of trial itself.

■ We cannot agree, however, that the circumstances existing within the United States Attorney's Office at the times here pertinent were "exceptional" within the meaning of Rule 5(h). Judge Bauman himself observed, having the benefit of his own prior experience as a prosecutor in the same office, that understaffing has not been unusual within the criminal division of the United States Attorney's Office for the Southern District. Were we to hold that periodic understaffing could constitute an exceptional circumstance within

the meaning of Rule 5(h), we would seriously undermine the effectiveness of Rule 4, the purpose of which is to insure that prosecutorial delay will not thwart the prompt trial of criminal cases. See *Hilbert v. Dooling*, 476 F.2d 355, 357–358 (2d Cir. 1973) (en banc), cert. denied, 414 U.S. 878, 94 S.Ct. 56, 38 L.Ed. 2d 123 (1973).

The issue of what "neglect is excusable" presents a different question—one with which we have not previously been concerned, since the Second Circuit Rules contained no such provision. Judge Bauman made no explicit ruling on this issue, being reluctant to characterize as "neglect" Assistant United States Attorney Sabetta's performance under the concededly difficult circumstances existing in the United States Attorney's Office. Without implying that the failure to obtain and file the indictment within a period which would permit appellant to plead and the government to serve its notice of readiness within six months of arrest was attributable to specific fault on the part of the Assistant, as distinguished from that of the Office, we have no reluctance in labelling it neglect. Any other finding would necessarily be inconsistent with what we have already said. At the same time we have no hesitancy in concluding that in view of the undisputed circumstances the neglect was excusable. Even if the Assistant had been aware of *Valot*—and it seems probable that some members of the United States Attorney's office were acquainted with it—the implication that the Rules would be construed to require the indictment and plea within the six-month period may not have been entirely clear. The scheme of the Plan, like the Second Circuit Rules which preceded it, was not to "mandate trial within a specified time" but to focus "primarily on prosecutorial delay as a means of implementing the public interest in disposition of criminal charges with reasonable dispatch." *Hilbert v. Dooling, supra,* 476 F.2d at 357. Absent more specific express requirements a prosecutor could reasonably have believed that he would be fulfilling his obligation if he were to

file an objective manifestation of his readiness to proceed to trial within six months of arrest, regardless of whether or not the defendant had entered his formal plea, since the prosecutor would thus actually have been ready to proceed to trial within six months. Indeed, when after entry of a plea a notice of readiness is filed within six months, additional time is almost inevitably allowed to the defendant for the making of pretrial motions, regardless of the government's readiness.

█ Since the filing of a notice of readiness within six months, regardless of the entry of a plea, might have appeared reasonably to comply with both the spirit and technical requirements of Rule 4, it would not have been unreasonable for the Office of the United States Attorney to interpret our remand of *Valot*, in which we stated that "no findings of fact were made as to what actually occurred, including the reasons for the delay," as meaning that the district court must determine whether the government had in fact been ready to go to trial within six months, which would constitute compliance with Rule 4, and, if he had not actually been ready, to decide whether there were exceptional circumstances warranting extension of the six-month period pursuant to Rule 5(h).

To put the prosecutor's neglect in perspective we have no doubt that if the full import of *Valot* had been fully expressed in our opinion the United States Attorney would probably have taken greater note of it and proceeded to acquaint each Assistant with its significance. In that event the prosecutor would probably have taken steps to have the indictment filed at an earlier date, which would permit pleading to be scheduled in accordance with local Rule 7(A), or he might have sought permission from the court to place the case on the calendar for pleading prior to the expiration of the six-month period.[5] Taking into consideration all of the circumstances, including the fact that the plea was entered only five days after the expiration of the six-month period, we are persuaded that the neglect here was "excusable" within the meaning of Rule 4. Indeed, if that term is to have any effect at all it is difficult to conceive of a more appropriate case for its application than the present one.

Our decision does not mean that a similar practice on the part of the prosecutor will be countenanced in the future. Having now had fair warning of our clarification of the *Valot* remand, he must at the risk of dismissal of an indictment conform to the six-month requirement as herein clarified.

The judgment of the district court is affirmed.

5. The purpose of Rule 7(A) is to insure that before an indictment is calendared for pleading the defendant will actually receive notice that he appear on a specified date, which is usually sent through the mail. If, instead of mailing the notice on Tuesday, May 8, the date when the indictment was filed, the prosecutor had requested permission from the court to effectuate personal service within a few days of a notice calling upon Bowman to plead on Monday, May 14, it appears likely that the application would have been granted. In that event the government could have complied with the six-month rule.