UNITED STATES of America, Appellee,

v.

Andrew FUREY, Appellant.

No. 1098, Docket 74–1410.

United States Court of Appeals,
Second Circuit.

Argued June 5, 1974.

Decided July 2, 1974.

Paul B. Bergman, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E. D. N. Y., Raymond J. Dearie, David A. De-Petris, Asst. U. S. Attys., of counsel), for appellee.

James M. Furey, Hempstead, N. Y. (Furey & Mooney, Hempstead, N. Y., on the brief), for appellant.

Before KAUFMAN, Chief Judge, MANSFIELD and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

Andrew Furey appeals from a judgment entered in the United States District Court for the Eastern District of New York on March 8, 1974, following a non-jury trial before Hon. John F. Dooling, Jr., finding appellant to be a juvenile delinquent in violation of 18 U.S.C. § 5031 and committing him in accordance with 18 U.S.C. § 5034 to the custody of the Attorney General until he reaches the age of 21. The judgment is based upon an information charging that Furey possessed with intent to distribute about 1¼ pounds of opium in violation of 21 U.S.C. § 841(a)(1).

During a routine examination of incoming overseas mail, inspectors discovered the presence of opium in a 1¼ pound package which was addressed to the appellant Andrew Furey. On December 19, 1972, the package was duly delivered to Furey's home under controlled conditions by a regular letter carrier of the U.S. Postal Service. Shortly thereafter, while two of the surveilling agents were entering appellant's home through the front door, a third agent observed someone throwing a parcel from a back window of an upstairs bedroom, the same room in which the appellant was apprehended by the other agents. The parcel consisted of one slab of opium and another of hashish, wrapped in plastic.

Furey does not complain on this appeal about the seizure of these drugs, but rather contends that the district court erred in failing to suppress certain letters taken from a bureau in his bedroom. The argument is frivolous in view of the substantial evidence to support the district court's findings that the agents reasonably believed that the drugs thrown from the window did not comprise all the drugs which had been delivered to Furey's home and that the

search of his bureau did not take place until after the agents had procured a warrant and had further obtained the consent of Furey's mother to search the premises.

Furey's other argument on appeal, however, is more substantial. Furey urges that the district court erred in denying his motion to dismiss, which was based on the ground that the Government was not ready for trial within the time prescribed by the Eastern District's Plan for Achieving Prompt Disposition of Criminal Cases (the Plan).[1] Under Rule 4[2] of the Plan "the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest." Rule 4 further provides that if the Government is not ready within the six-month period, the indictment shall be dismissed with prejudice, unless the period has been tolled under one or more of the exceptions listed in Rule 5 or the Government's neglect is found to have been excusable.

Furey was arraigned on the afternoon of his arrest, December 19, 1972, before Magistrate Brisach on a complaint, signed by a special agent of the United States Bureau of Customs, charging that Furey had possessed with intent to distribute 1¼ pounds of opium in violation of 21 U.S.C. § 841(a)(1). He was released from custody a few days later upon the giving of a $5,000 surety bond.

It soon became clear that Furey, who was born on April 23, 1955, had not yet become 18 years of age and was therefore a juvenile within the meaning of 18 U.S.C. § 5031. Because of his juvenile status, there were two ways in which the case against Furey could have proceeded: (1) as an adult offender, which would have required an express direction by the Attorney General; or (2) as a juvenile delinquent, which required the appellant's consent. 18 U.S.C. § 5032. The determination of the alternative to be followed here was submitted to the Attorney General, although it is not clear when this was done. In any event, sometime in February or early March, 1973, the determination was made that the Attorney General would not direct criminal proceedings against Furey if he would consent to the juvenile delinquency procedure.

In March and April, 1973, there was apparently some discussion between

---

1. The Plan, which, in accordance with Fed. R.Crim.P. 50(b), was adopted by the judges of the United States District Court for the Eastern District of New York and approved by the Judicial Council, became effective on April 1, 1973 and therefore governs the disposition of this case. See Hilbert v. Dooling, 476 F.2d 355, 356 n.2 (2d Cir.) (en banc), cert. denied, 414 U.S. 878, 94 S.Ct. 56, 38 L.Ed.2d 123 (1973). The Eastern District's Plan, like that of the Southern District, adopted many of the provisions of the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases (which were superseded by the district courts' prompt disposition plans) and therefore many court decisions under those Rules have precedential value when construing provisions of the Plan. United States v. Bowman, 493 F.2d 594, 595 n. 3 (2d Cir. 1974).

2. Rule 4 of the Plan provides:
   In all cases the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest. If the government is not ready for trial within such time, and if the defendant is charged only with non-capital offenses, the defendant may move in writing, on at least ten days' notice to the government, for dismissal of the indictment. Any such motion shall be decided with utmost promptness. If it should appear that sufficient grounds existed for tolling any portion of the six-months period under one or more of the exceptions in Rule 5, the motion shall be denied, whether or not the government has previously requested a continuance. Otherwise the court shall enter an order dismissing the indictment with prejudice unless the court finds that the government's neglect is excusable, in which event the dismissal shall not be effective if the government is ready to proceed to trial within ten days.

counsel from which the prosecutor got the impression that Furey would not only consent to delinquency proceedings, but also would not contest the adjudication. Little else, however, transpired until June 18, 1973, when the Assistant United States Attorney sent a letter to defense counsel informing him that, in accordance with 18 U.S.C. § 5033, the matter would be heard to obtain consent to proceed against the defendant as a juvenile delinquent on June 21, 1973, before Hon. Orrin G. Judd, United States District Judge for the Eastern District. The hearing took place as scheduled and the information charging juvenile delinquency was filed with the defendant's consent appended to it. Although under the Eastern District's Local Rules, Judge Judd, having supervised the taking of the consent, would normally have been assigned the case, it was, for some unexplained reason, randomly assigned to Judge Dooling. The precise assignment date is not known but it was sometime before September 1, 1973.

Nothing further took place until October, 1973 at which time the Assistant made inquiry of Judge Dooling as to the status of the matter and an initial conference was scheduled for December 13th. At that conference defense counsel announced his intention to move for dismissal on the ground that the Government had not complied with Rule 4 of the Eastern District's Plan. The Assistant advised that the Government was ready to go to trial, although a formal notice of readiness was not filed until December 21, 1973. On the day following the conference, the defendant filed his motion to dismiss, which Judge Dooling, after a hearing, denied in a memorandum and order dated December 27, 1973. Despite the fact that almost a year had elapsed between the defendant's arrest and the Government's expression of readiness for trial, Judge Dooling found no violation of Rule 4 of the Plan:

No purposive delay by the Government has occurred. Inadvertence and administrative confusion compounded by clerical omissions on the parts of the Assistant United States Attorney, the undersigned and the Clerk's office have caused the delay . . . .

The case is one in which, if it is within Rule 4 of the Plan, falls into the class of cases in which the six months limitation period would be extended because the delay has been occasioned by exceptional circumstances within the idea of Rule 5(h).

However, June 21st, 1973, is the base-line date for this case. On that date for the first time the defendant was charged as a juvenile delinquent. The notice of readiness was filed on December 21, 1973, and on December 13, 1973, the Government unequivocally advised defendant and the Court that it was ready and willing and anxious to proceed . . . The case will, therefore, be heard on January 2, 1974, on the basis that the Government was ready within six months of June 21, 1973 . . . .

Judge Dooling did not consider the issue of whether the Government's conduct here, assuming it constituted "neglect," should be characterized as "excusable neglect."

On January 2, 1974, the date set for the juvenile delinquency hearing, Furey petitioned this court for a writ of mandamus and moved for a stay of prosecution. Circuit Judge Henry J. Friendly denied the motion for the stay and accordingly dismissed the petition for mandamus as moot. Furey v. Dooling, Docket No. 74–1004 (2d Cir. Jan. 2, 1974).

■ As a matter of policy we see no reason why juvenile delinquency proceedings should be excluded from the coverage of the Plan. The same policies which precipitated the enactment of rules providing for the prompt disposition of criminal proceedings are applicable whether the person charged is an adult or a juvenile. Thus, the deter-

rence afforded by prompt disposition,[3] the potential prejudice to any defense arising from delay as well as the disruption and anxiety created by a criminal charge,[4] are present whether the accused be a juvenile or an adult.

It is, of course, true that the Plan is directed toward the "Prompt Disposition of *Criminal* Cases," and we have recently observed that "[p]roceedings under the [Federal Juvenile Delinquency] Act are plainly different from the ordinary criminal prosecution," United States v. Torres, 500 F.2d 944, at 948 (2d Cir. June 14, 1974). It has also been recognized, however, that delinquency proceedings are not devoid of criminal aspects and the courts have carefully shunned the approach of determining the rights of juveniles by characterizing delinquency proceedings as either "criminal" or "civil." See McKeiver v. Pennsylvania, 403 U.S. 528, 541, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (plurality opinion). In view of the salutary purposes of the Plan, which are in no way inhibitory of the goals of the juvenile court but are rather compatible with its protective and paternalistic procedure (McKeiver v. Pennsylvania, *supra*, 403 U.S. at 545, 91 S.Ct. 1976 at 1986), we are persuaded that juvenile delinquency adjudications were not intended to be beyond the scope of the Plan. See also In re Gault, 387 U.S. 1, 17–18 & n. 23, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

▪ Having concluded that the Plan is applicable here, we cannot agree that the baseline is June 21, 1973, the date the information and appellant's consent were filed. Rule 4 of the Plan expressly provides that the six-month period runs "from the date of the arrest . . . or the filing . . . of a formal charge upon which the defendant is to be tried . . . *whichever is earliest.*" (emphasis added). Here, the appellant was arrested on December 19, 1972 for the same offense that served as the basis for the delinquency adjudication.

On June 21st, the nature of the proceeding against Furey did change from that of a felony prosecution to that of a delinquency adjudication, but this does not justify ignoring the plain language of Rule 4, especially since the Government's proof in the delinquency proceeding was no different than that which would have been required in the felony prosecution had that been pursued. It is no answer to suggest that Furey by consenting to juvenile treatment avoided the severe penalties of a felony conviction. Making a juvenile's right to speedy adjudication depend upon his refusing to consent would introduce into the juvenile court process a factor which could be nothing but counter-productive. Counsel, faced with factual situations like that presented here (six months having elapsed prior to the consent hearing), might well feel bound to balance the risks of a felony conviction against the possibility of having the charges dismissed for failure to comply with the Plan. This would introduce a factor which is contrary to "the strong public

3. The Advisory Committee on the Rules in their notes in connection with Fed.R.Crim.P. 50(b) recognized that the public has a substantial interest in the prompt disposition of criminal matters, since "it is the certain and prompt imposition of a criminal sanction rather than its severity that has a significant deterring effect upon potential criminal conduct." See also United States v. Rollins (II), 487 F.2d 409, 413 (2d Cir. 1973).

4. In United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971), the Supreme Court observed:

Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

interest in *encouraging* resort to the procedures for handling and treatment of juvenile delinquents established by the Federal Juvenile Delinquency Act." United States v. Torres, supra, 500 F.2d at 949. (emphasis added).

Finally, we find no significance to the argument that a juvenile profits from delay in adjudication since he cannot be incarcerated beyond age 21. This ignores the public interest in prompt adjudication, as well as the fact that the supervision of juvenile delinquents is aimed at rehabilitation rather than punishment. We are not at all persuaded that a juvenile gains by avoiding adequate supervision today, only to suffer imprisonment for crimes committed tomorrow.

■ The Government has urged on this appeal that even if we consider that the six-month period began to run on the day of appellant's arrest, we should exclude the time prior to his consent on the grounds that during that time Furey was "incompetent" to stand trial within the meaning of Rule 5(a)[5] and "unavailable" for trial under Rule 5(d).[6] Since we must assume that the drafters employed these terms in their ordinary usage, we reject the Government's contentions. There is no claim that Furey may have been mentally unfit to stand trial, nor was there any question of fact as to his age. His status did not preclude prompt disposition. Moreover, he was clearly "available" within the ordinary meaning of that term. Cf. United States v. Rollins (II), 487 F.2d 409, 412 (2d Cir. 1973). At least after the Attorney General's determination in Feb-

ruary or early March, all the prosecutor had to do was schedule the consent hearing to determine whether the case would proceed as a delinquency adjudication or as a felony prosecution. Due diligence would have produced the appellant so far as the record before us would indicate.

■ The Government has also urged that the period prior to consent in juvenile delinquency proceedings should always be considered to constitute "exceptional circumstances" within the meaning of Rule 5(h).[7] Admittedly, because of the necessity of obtaining (1) the direction of the Attorney General and (2) the juvenile's consent, such proceedings do present distinct problems, and the district courts, upon further reflection, may find it advisable to amend their prompt disposition plans to incorporate a specific provision governing juvenile proceedings. However, as the Plan exists, we cannot accept the Government's construction, which would again have the effect of having the six-month period commence to run on the day the information and consent are filed rather than the date of arrest, which is the clear intent of the Plan. If there is anything that Rule 5(h) was not intended to cover, it is the blanket type of exclusion proposed by the Government here. As Chief Judge Kaufman pointed out in United States v. Rollins (I), 475 F.2d 1108, 1110 (2d Cir. 1973), " 'Other periods of delay occasioned by exceptional circumstances,' was intended to cover extraordinary occasions that the drafters could not envision . . . ." See also United States v. Favaloro, 493 F.2d 623, 625

---

5. Rule 5(a) directs that we exclude from the six-month period:
   The period of delay while proceedings concerning the defendant are pending, including but not limited to proceedings for the determination of competency and the period during which he is incompetent to stand trial, pre-trial motions, interlocutory appeals, trial of other charges, and the period during which such matters are sub judice.

6. Under Rule 5(d), we exclude from the six-month period:

The period of delay resulting from the absence or unavailability of the defendant. A defendant should be considered absent whenever his location is unknown. A defendant should be considered unavailable whenever his location is known but his presence for trial cannot be obtained by due diligence.

7. "Other periods of delay occasioned by exceptional circumstances" are excluded from the six-month period by Rule 5(h).

(2d Cir. 1974). Juvenile delinquency proceedings can hardly be so characterized.

■ Neither can we agree with the district judge that the delay in *this case* was due to "exceptional circumstances." The determination of the Attorney General came in a reasonably timely fashion. Less than four months had elapsed since the arrest and, as the district court recognized, the case presented no particular trial problems. Apparently there was an administrative mix-up in the Clerk's Office regarding the assignment of the case and Judge Dooling did not call the case up for action, but we fail to see why these facts should be characterized as "exceptional circumstances" so as to relieve the Government of its obligation of timely filing its notice of readiness. The Eastern District's prosecutors were well aware that the better practice was to file the notice of readiness with the Clerk's Office and not directly with the assigned judge. United States v. Pierro, 478 F.2d 386, 389 (2d Cir. May 9, 1973). Nor have we been presented with any unusual conditions in the United States Attorney's Office which rise to the level of "exceptional circumstances." See United States v. Favaloro, *supra.* The prosecutor here, of course, not only was under the impression that Furey would consent to delinquency proceedings but also that the proceedings would not be contested. This misunderstanding, however, does not bring the case within Rule 5(h). Unlike adult prosecutions in which plea negotiations may in some instances constitute exceptional circumstances, see United States v. Scafo, 470 F.2d 748 (2d Cir. 1972), juvenile proceedings are of such nature that there is nothing about which to negotiate. 18 U.S.C. §§ 5031 & 5034 do not distinguish underlying offenses and there is no claim here that the Attorney General's determination was conditional on the juvenile proceedings being uncontested. Moreover, whether the proceeding is contested or not, we are advised that in the Eastern District an evidentiary hearing is held to insure that the juvenile did in fact violate the law.

Having found that the Plan is applicable and that none of the Rule 5 exceptions urged are pertinent, there still remains the possibility that the neglect of the Government here was "excusable" under Rule 4 of the Plan. See United States v. Bowman, 493 F.2d 594 (2d Cir. 1974). This was a question not considered below and therefore no findings were made on the point. We do not find the record before us is sufficiently developed to make the determination here. We are not aware that the application of the Plan to juvenile proceedings has ever been decided before this appeal. The understanding of the prosecutor of the Plan's applicability at the time of the procedures employed below would possibly bring the case within United States v. Bowman, *supra.*

We therefore vacate the judgment of the district court and remand for further proceedings on the appellant's motion to dismiss. The district court, after considering such additional evidence as may be relevant, should make findings of fact on the issue of excusable neglect. If it determines that the motion should be denied, it shall enter a new final judgment, thereby preserving Furey's right to further appellate review. In the event it determines that the motion should be granted, the charges against Furey should be dismissed.

Judgment vacated and case remanded.