**UNITED STATES of America,**
**Plaintiff,**

v.

**Fred J. LAZARD and John Cartier,**
**Defendants.**

**No. 72 Cr. 1127.**

United States District Court,
S. D. New York,
Criminal Division.

Jan. 9, 1975.

Paul J. Curran, U. S. Atty., New York City, for plaintiff; Silvio J. Mollo, Chief Asst. U. S. Atty., Howard Wilson, Asst. U. S. Atty., of counsel.

Stephen Greenberg, Robinson, Wayne & Greenberg, Newark, N. J., for defendants.

### MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

On November 14, 1974, this court, on its own motion, dismissed the above-entitled criminal indictment as to all four defendants.[1] At that time, the court noted that the government had informally announced its intention to *nolle prosequi* the counts against defendant Niedelman, and that, as to the other defendants, the government had "neither filed a notice of readiness nor shown any other signs of life (with respect to this particular case)" for more than a six-month period.

On November 29, 1974, Assistant United States Attorney Howard Wilson submitted an affidavit stating that throughout 1974, he had been negotiating a disposition of this matter with counsel for defendants Lazard and Cartier. Based on that affidavit, the government moved to vacate the order of dismissal as to these two defendants. There was no attempt to reopen the dismissals as to either Niedelman or Baldwin.

Since the original order dismissing the indictment had been made by the court without notice to the government or a hearing, I granted the government's motion to vacate. Counsel for defendants Lazard and Cartier then formally moved to dismiss the action pursuant to Rule 4 of the Plan for the United States District Court for the Southern District of New York for Achieving Prompt Disposition of Criminal Cases (Plan).[2] A hearing on that motion was held on December 17, 1974. For the reasons which follow, I have concluded that the defendants' motions to dismiss must be denied.

At the outset, it must be noted that the government did violate the technical requirements of Rule 4 of the Plan. On April 24, 1974, defendants Cartier and Lazard were allowed to withdraw guilty pleas that had been entered in October, 1972. It was not until seven months and six days later—November 29, 1974—in Wilson's affidavit in support of the motion to vacate—that the government first informed the court that it

---

1. The indictment had originally named the above two defendants, and Hilda Niedelman and Curtis Baldwin.

2. "4. All Cases: Trial Readiness and Effect of Non-Compliance.

In all cases the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest. If the government is not ready for trial within such time, and if the defendant is charged only with non-capital offenses, the defendant may move in writing, on at least ten days'

notice to the government, for dismissal of the indictment. Any such motion shall be decided with utmost promptness. If it should appear that sufficient grounds existed for tolling any portion of the six-months period under one or more of the exceptions in Rule 5, the motion shall be denied, whether or not the government has previously requested a continuance. Otherwise the court shall enter an order dismissing the indictment with prejudice unless the court finds that the government's neglect is excusable, in which event the dismissal shall not be effective if the government is ready to proceed to trial within ten days."

was prepared to proceed to trial against Cartier and Lazard.

■ The fact that the government may have informed the defendants of its readiness in no way relieves it of its obligation so to inform the court. As the Second Circuit stated in United States v. Pierro (1973) 478 F.2d 386, 389 "[U]nder Rule 4 the Government must communicate its readiness for trial *to the court* in some fashion within the six-month period, as extended pursuant to Rule 5" (emphasis added). Such a rule is necessary to the exercise of the court's responsibility to manage its calendar and to protect not only the rights of defendants, but also the interest of the public in the speedy disposition of criminal cases.

■ The government argues that it complied with the six-month rule when it filed a Notice of Readiness as to co-defendant Niedelman on March 28, 1973. At the time, defendant Niedelman was the only one of the four scheduled to go to trial.

This argument, however, seems specious. The notice of readiness filed in March, 1973 is captioned "United States of America v. Hilda Niedelman." There is no mention of defendants Cartier or Lazard. Furthermore, despite the government's assertion to the contrary in its brief,[3] one of the few facts made abundantly clear to the court during this prosecution was that the government had no intention of ever proceeding to trial against Niedelman once many of the counts against her had been dismissed on a pretrial motion in April, 1973.[4]

The government also contends that the plea negotiations conducted with counsel for Lazard and Cartier provide adequate grounds to toll a sufficient portion of the elapsed time pursuant to Rule 5 of the Plan so as to avoid a technical violation of Rule 4. It argues on the basis of certain dicta in United States v. Scafo (2d Cir. 1972) 470 F.2d 748, United States v. Scafo (2d Cir. 1973) 480 F.2d 1312 and United States v. Furey (2d Cir. 1974) 500 F.2d 338, 344, that the type of plea negotiations involved in this case constitute the type of "exceptional circumstances" contemplated by Rule 5(h) of the Plan.[5]

■ This contention too must be rejected. Although it is possible that plea negotiations in some instances may constitute exceptional circumstances, the negotiations conducted in this matter, however diligent they were, clearly do not. There was nothing present in these negotiations which prevented the government from filing the notice of readiness with the court. As Chief Judge Kaufman pointed out in United States v. Rollins (2d Cir. 1973) 475 F.2d 1108, 1110, Rule 5(h) was intended "to cover extraordinary occasions that the drafters [of the Rules] could not envision." Ordinary plea negotiations certainly do not fall into such a category.

Having found that the Plan is applicable and that none of the Rule 5 exceptions are pertinent, there remains the question whether the neglect of the government here was "excusable" under Rule 4 of the Plan. See, United States v. Furey, *supra*, 500 F.2d 338. This, as I view the matter, separates itself into two questions: (1) Should Mr. Wilson's failure to file a notice be characterized as excusable neglect?; and (2) Was the government guilty of any oppressive conduct which should prompt me to decline to reinstate the prosecution? Cf. United States v. Dooling (2d Cir. 1969) 406 F.2d 192, 196. *For the reasons which follow, I answer both those questions in the government's favor.*

---

3. See Government's Memorandum of Law, p. 3: "At no time has the Government withdrawn that notice or indicated it was not ready for trial in this case on 5 days notice."

4. See, United States v. Niedelman (S.D.N.Y. 1973) 356 F.Supp. 979.

5. "Other periods of delay occasioned by exceptional circumstances" are excluded from the six-month period by Rule 5(h). The government does not contend that any of the other exceptions in Rule 5 are applicable.

■ As to the first question, it is clear to me that Mr. Wilson was guilty of no more than a good faith mistake. Being preoccupied with his apparently successful efforts to dispose of the case by plea, he simply was not thinking in terms of a trial or of the necessity of a notice of readiness. Moreover, office routine having been sidetracked by the original plea, the failure to file a notice was not brought to his attention by any appropriate "tickler" system. Finally, defendants frankly concede they were in no way prejudiced.

Two matters originally gave me concern as to the possibility of "oppressive conduct". First, it had seemed to me that the government was being wholly unreasonable in insisting on its pound of flesh from these two defendants (who in cooperating with the government had created the most compelling evidence against themselves) while the case was dismissed as to Mrs. Niedelman who seemed to me to be the principal target of the prosecution. Secondly, it developed during the hearing that defendants' attorney had been told in the course of plea negotiations that both would have to accept the proffered plea (*nolo contendere*) or both would have to go to trial.

■ Considering matters in inverse order, I am persuaded that although such a statement was made to the defendants' attorney by Mr. Wilson, it did not represent government policy—or even Mr. Wilson's firm position. I base this finding on the following considerations: Mr. Wilson (whom I found to be truthful) had no recollection of the conversation; Mr. Silvio Mollo, then Chief

Assistant United States Attorney had never been advised of the conversation; and the United States Attorney himself testified that it is not now the policy of his office to refuse a proper plea to any defendant just because some co-defendant may insist upon going to trial.

With respect to disparate treatment between these defendants and Mrs. Niedelman, the hearing demonstrated that she had not been a "principal target" of the prosecution and that the defendants went before the grand jury with the full realization that they might be indicted while she escaped. It still remains true that the main distinction between Mrs. Niedelman and these defendants is that they told the truth before the grand jury and thus incriminated themselves (in the government's view) [6] while she did not. In light of that circumstance, I might—were I exercising prosecutorial discretion—conclude that the scales of justice would be more evenly balanced if these defendants did not fare more badly than Niedelman; and that if it were beyond my power to convict her I should dismiss as to them. However, I cannot find the government's contrary attitude to constitute oppressive conduct. See, United States v. Cox (5th Cir. 1965), 342 F.2d 167, cert. den., 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700.

The defendants' motions to dismiss are accordingly denied. If the defendants—or either of them—wish to plead *nolo*, I am prepared to accept such a plea. If, however, there is to be a trial I shall—in view of my previously expressed views—arrange to have the case assigned to another judge.

So ordered.

---

**6.** I may note that it is not as clear to me as it seems to be to the government that a case can be established against these defendants. As noted in the *Niedelman* opinion (356 F. Supp. at 983) the indictment charges a fraud against Fiat, Baldwin's employer. In order to establish such a charge against these defendants it would have to be established beyond a reasonable doubt that the defendants either knew or assumed that Fiat had been unaware of the fact that Baldwin had been receiving payments. From the nature of the arguments before me, I tend to doubt that such could be established.