The UNITED STATES of America,

v.

Carole BEBERFELD, Defendant.

No. 75 Cr. 873.

United States District Court,
S. D. New York.

Feb. 5, 1976.

**1120**

Thomas J. Cahill, U. S. Atty., S. D. New York (Frederick T. Davis and Michael Q. Carey, Asst. U. S. Attys., New York City, of counsel), for United States.

Diller, Schmukler & Asness, New York City, for Carole Beberfeld.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Defendant Carole Beberfeld moves to dismiss this narcotics indictment on the ground that the government has failed to comply with the six month rule[1] set forth in the Plan For Achieving Prompt Disposition of Criminal Cases.[2] The principal questions raised by this motion are whether a certain written waiver of speedy prosecution signed by the defendant tolled the operation of the six month rule, and whether the government was entitled to rely on the waiver having that effect.

I held a hearing herein at which the defendant and Special Agent James Greenan, of the Drug Enforcement Administration (DEA), testified.[3] From their testimony and the submitted affidavits, I find the following facts: The defendant was arrested on November 7, 1974 in her apartment by agents of the DEA. They informed her of her rights, searched her apartment, and confiscated some items including her address book and certain "marked" funds the agents had used in a narcotics transaction earlier that day. She was taken to DEA headquarters. There she was again informed of her rights, and questioned for approximately three hours. She signed a waiver of her rights to remain silent and to counsel, and thereafter wrote a statement acknowledging and describing her role in the crimes for which she is

1. "4. In all cases the government must be ready for trial within six months from the date of arrest, service of summons, detention or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest."

2. In her notice of motion, the defendant invokes the Second Circuit Rules for the Prompt Disposition of Criminal Cases which includes the same six month rule. Since the Plan, adopted by the Southern and Eastern Districts of New York superceding the Second Circuit Rules, took effect on April 1, 1973 and the arrest here occurred on November 7, 1974, it

is the Plan rather than the Rules which govern this case. This distinction is only of substantive importance in fashioning a remedy. See n. 24 *infra*.

3. I directed the parties to present evidence on "the extent of cooperation, given or promised by the defendant or expected by the government; efforts, if any, by the government to utilize the defendant's assistance in ongoing investigations; the time of termination (a) of such assistance, and (b) of any expectation thereof; and finally any communications between the parties during the said period, and up to the date of indictment."

here charged, and agreed to cooperate with the government.[4] She was then driven home, and told to appear the next morning in the office of Assistant United States Attorney Michael Carey.

The next morning the defendant did go to Carey's office where she was questioned, and thereafter Carey prepared a typed instrument entitled, "Waiver of Arraignment and Speedy Trial" which waived the right to immediate arraignment, to counsel, and to a probable cause hearing. In addition, the said statement purported to waive the Rules Regarding the Prompt Disposition of Criminal Cases.[5] Carey read the statement to the defendant several times, and asked her whether she understood it. She responded affirmatively, initialled each page and signed it. The purpose of the waiver and the consequent non-arraignment, one can reasonably assume, was to provide a favorable climate for the expected cooperation from which both the government and the defendant hoped to receive benefits.[6]

For the next three or four days thereafter, agents from DEA communicated on a daily basis with the defendant. In response to her assertion that she could not cooperate without the phone numbers contained in her confiscated address book, she was furnished with the numbers she claimed to need. About a week after her arrest, she first retained a lawyer who advised her about the mechanics of the Plan, and the government's obligation to prosecute within six months. Whether because of lack of desire or lack of knowledge, she was not a useful informant, and within two months of her arrest, she had a final conversation with Agent Greenan in which she unequivocally refused to cooperate.[7] Thereafter, there was no communication between the defendant and DEA; Assistant United States Attorney Carey was apparently not informed of the defendant's refusal to cooperate until the spring or summer of 1975, some months later. On August 29, 1975, the defendant, along with three codefendants, was indicted for violations of the narcotics laws. She entered a not guilty plea on September 8, and made this motion for dismissal on October 2. Apparently because this matter is *sub judice*, the government has not filed a notice of readiness. In sum, after some three to seven weeks of "cooperation," defendant, to the government's knowledge, was "uncooperative" for another eight months before indictment.

■ At the outset, the defendant contends that her waiver was neither knowing nor voluntary. Taking into account her college education, Agent Greenan's testimony that the statement was read and explained to her, the facts that she initialled every page, that she was not in custody, and that there was the passage of almost a day between the time of arrest and the signing of the waiver, I

---

4. The testimony of the defendant and Agent Greenan diverge considerably in their accounts of the questioning. The defendant testified that the agents threatened her with incarceration at Rikers Island if she did not cooperate and refused to allow her to use a telephone. Agent Greenan denied that the defendant was threatened or refused use of a telephone. I credit his testimony.

5. The Statement in that regard reads as follows:

I have been advised of my right to a speedy trial on the charges for which I was arrested and understanding those rights, hereby request/consent to a continuance of all pending proceedings in my case and expressly waive any and all rights to a speedy trial under the Second Circuit Rules Regarding the Prompt Disposition of Criminal

Cases, Rule 48(b) of the Federal Rules of Criminal Procedure, the Sixth Amendment of the United States Constitution or other pertinent provisions.

The reference to Rule 48(b) is clearly a mistake. Carey presumably intended that the defendant waive her rights under Rule 50(b).

6. The defendant presumably hoped never to be indicted, or at least, having confessed, to have her cooperation called to the Court's attention on sentencing, and the government hoped to apprehend other narcotics law violators.

7. According to the defendant this call occurred around Thanksgiving 1974. Agent Greenan recalled that it took place in December. In view of the fact that the defendant was not indicted until August 1975, this difference is immaterial.

reject her contention, and find that her waiver was knowing and intentional. *Argersinger v. Hamlin*, 407 U.S. 25, 37, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). I find further support for this conclusion in the fact that after discussing the mechanics of the Plan with her lawyer one week after arrest, the defendant chose not to revoke her waiver.

■ The troublesome question that remains, however, is whether a knowing and voluntary waiver of "all rights" under the Plan can in and of itself toll operation of the six month rule.[8] The government argues that since the defendant can waive her constitutional rights, *a fortiori* she can waive her less fundamental rights under the Plan. However, rephrasing the question in terms of the underlying issue, does the rule bestow upon the defendant a personal right which is hers to waive, or is the rule intended to further a public interest which extends beyond a concern for the rights of a defendant, and hence is not subject to waiver? From an examination of the Plan, its overall scheme and purpose, and the case law interpreting it, I reach the latter conclusion.

In a statement accompanying the Second Circuit Rules,[9] the Circuit Council noted that:

> The public interest requires disposition of criminal charges with all reasonable dispatch. The deterrence of crime by prompt prosecution of charges is frustrated whenever there is a delay in the disposition of a case which is not required for some good

reason. The general observance of law rests largely upon a respect for the process of law enforcement. When the process is slowed down by repeated delays in the disposition of charges for which there is no good reason, public confidence is seriously eroded.

This emphasis upon the public interest in the prompt disposition of criminal cases has been a constant theme in the case law interpreting the Second Circuit Rules and the Southern District Plan.[10]

The Plan serves the public interest in ways extending beyond society's interest in the protection of the rights of the accused. Its framers recognized that swift punishment is essential to effective deterrence,[11] that there is a danger that defendants awaiting trial may commit other crimes, intimidate witnesses or flee,[12] and that "[w]hen the process is slowed down by repeated delays in the disposition of charges for which there is no good reason, public confidence is seriously eroded."[13] As the Second Circuit has stated: "[t]he Plan was not established primarily to safeguard defendants' rights. Rather the Plan, and the Second Circuit Rules before it, were to serve the public interest in the prompt adjudication of criminal cases." *United States v. Flores*, 501 F.2d 1356, 1360 n. 4 (2nd Cir. 1974).

■ Underlying the government position is the premise that the public, the defendant and the prosecutor all have the same interest in prompt disposition, and thus the public interest is adequately represented when the defendant and

---

**8.** There is no question that a period of even more than six months of actual cooperation would be excluded from the Rule as cooperation is deemed an "exceptional circumstance" under 5(h). *United States v. Valot*, 481 F.2d 22 (2nd Cir. 1973).

**9.** See n. 2, *supra*.

**10.** *See e. g. United States v. Rollins*, 487 F.2d 409, 413 (2nd Cir. 1973) ("The public interest in the prompt disposition of criminal cases is the touchstone of the Rules.")

**11.** In the notes to Rule 50(b) of the Federal Rules of Criminal Procedure—under which the Plan was promulgated—the Advisory Committee observed that "it is the certain and prompt imposition of a criminal sanction rather than its severity that has a significant deterring effect upon potential criminal conduct.

**12.** A.B.A., Standards Relating to Speedy Trial, 11 (1967).

**13.** Circuit Council statement accompanying Second Circuit Rules. *Hilbert v. Dooling*, 476 F.2d 355, 358 (2nd Cir.) (en banc), *cert. denied*, 414 U.S. 878, 94 S.Ct. 56, 38 L.Ed.2d 123 (1973).

the prosecutor agree to a waiver. But if such were the case, there would have been no need to enact the Plan. The court in promulgating the Plan—and Congress in enacting the Speedy Trial Act [14]—has determined that the immediate participants cannot be relied upon to further the public interest in prompt disposition. In its report on the Speedy Trial Act, the Senate Committee on the Judiciary noted that "[o]nly very rarely is it in the defendant's interest to seek speedy trial, for in most cases it is the last thing he wants." [15] Similarly, prosecutors, defense attorneys and even courts "depend on delay in order to cope with their heavy caseloads  . .  . . To them there is little incentive to move quickly in what they see as an unending series of cases." [16] Taking into account the lack of incentive prosecutors have to achieve prompt disposition, the Plan is designed to focus "primarily on prevention of prosecutorial delay as a means of implementing the public interest in disposition of criminal charges with reasonable dispatch." *Hilbert v. Dooling*, 476 F.2d 355, 357 (2nd Cir.) (en banc), *cert. denied*, 414 U.S. 878, 94 S.Ct. 56, 38 L.Ed.2d 123 (1973). It would be antithetical to this entire design if the parties were permitted to free themselves from the constraints imposed by the Plan through the simple expedient of the willing defendant signing a waiver. As the Advisory Committee to Rule 50(b)

noted, "there is need to try to expedite criminal cases even when both prosecution and defense may be willing to agree to a continuance  . .  . ."

Because the public interest is involved, the court must assume ultimate responsibility for prompt disposition. *United States v. Lasker*, 481 F.2d 229, 234 (2nd Cir. 1973), *cert. denied*, 415 U.S. 975, 94 S.Ct. 1560, 39 L.Ed.2d 871 (1974). In its Statement accompanying the Second Circuit Rules, the Circuit Council recognized that "the interest of the public and the rights of defendants can best be protected through a firm control of criminal prosecutions by the district courts." The Plan specifies that "[t]he court has sole responsibility for setting and calling cases for trial  . .  . . Each judge will schedule criminal trials at such times as may be necessary to assure the prompt disposition of criminal cases." 9(a).[17] Waiver of the Plan prior even to arraignment subverts this judicial responsibility by preventing the case from even reaching the trial judge.[18]

Although the Plan does not explicitly preclude the type of waiver involved in this case,[19] it sets forth a comprehensive framework in which such a waiver, by itself, has no place. It specifies eight grounds which justify an extension of the six month limit. 5(a)–(h). The last of these eight, 5(h), which covers "other periods of delay occasioned by exception-

14. 18 U.S.C. § 3161 et seq., enacted January 3, 1975.

15. S.Rep. No. 93–1021, 93rd Cong., 2nd Sess. 14 (1974).

16. Opening statement of Sen. Ervin, *Hearing on S. 754 Before a Subcomm. of Senate Comm. on the Judiciary*, 93rd Cong., 1st Sess. 2 (1973).

17. The Speedy Trial Act places the same emphasis upon the role of the trial judge. For example, (h)(2) requires court approval of deferred prosecution agreements. 18 U.S.C. § 3161. Of this provision, the Senate Report states that it "assures that the court will be involved in the decision to divert and that the procedure will not be used by prosecutors and defense counsel to avoid the speedy trial limits." S.Rep.No.93–1021, 93rd Cong., 2nd Sess. 37 (1974).

18. Under the Southern District Calendar Rules, criminal cases are assigned to the trial judge from Part I after a plea of "not guilty" is entered. 4(B), 7(B). Hence, if arraignment is waived as here, the case remains indefinitely under the aegis of the rotating Part I judge, out of the control of the trial judge.

19. Rule 8 does provide that "failure of a defendant to move for discharge prior to plea of guilty or trial shall constitute waiver of such rights." But this simply recognizes the value of finality of judgment, and the waste of resources implicit in granting a motion to dismiss after trial upon grounds which are entirely established prior to trial. Rule 8 also provides that "(a) demand by a defendant is not necessary for the purpose of invoking the rights conferred by these rules."

al circumstances," is sufficiently flexible to cover such diverse situations as ongoing police investigations,[20] plea bargaining [21] and cooperation by the defendant.[22] This list of exceptions is so extensive in number and broad in scope as to compel the conclusion that it was intended to exhaust the permissible reasons for delay. It makes waivers unnecessary in those instances where a further extension of time is justified. Permitting a waiver to have effect, absent some "exceptional circumstances" would not promote the public interest which the Plan seeks to protect.[23]

■ The government further contends that even if the waiver is ineffective, the six month limit has not expired because it did not commence until August 29, 1975, when the indictment was filed. It argues that the six month period does not begin until "the defendant is placed under the constraints of a formal document that subjects him to bail limitations or other disabilities of an arrest." This argument appears to be flatly inconsistent with language of the six month rule: "[i]n all cases the government must be ready for trial within *six months from the date of arrest*, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), *whichever is earliest.*" (emphasis added). To this, the government responds, in effect, that the framers of the Plan did not mean what they said, that by "arrest," they really meant something more than "arrest." This argument runs contrary to the entire body of case law interpreting the six month rule which has taken the framers at their word. *E. g. United States v. Furey*, 500 F.2d 338, 342 (2nd Cir. 1974).

For support of its position, the government cites *United States v. Flores*, 501 F.2d 1356 (2nd Cir. 1974). In *Flores*, the appellant was arrested on September 28, 1972 and arraigned the next day. On February 23, 1973, the United States Attorney's office decided there was insufficient evidence to prosecute, and had the complaint dismissed. After this dismissal, a previously unwilling informer agreed to cooperate, and, on the basis of his testimony, the appellant was rearrested. The court held that in computing the six month period, the time between the dismissal of the first complaint and the subsequent rearrest should be excluded. In justifying its exclusion, the court noted that after dismissal of the complaint, the defendant was no longer subject "to any of the disabilities associated with being under arrest, the subject of a complaint or indictment, or in the midst of a criminal prosecution." 501 F.2d at 1359–1360. But the court did not indicate that any disabilities beyond those associated with the very fact of being under arrest were necessary to start the running of the six month period. And in calculating the six month period, the court looked to September 28, the date of arrest, rather than September 29, the date of arraignment.

■ Even, however, if further disabilities were required beyond the fact of arrest, the fallacy in the government's position is that the defendant here was subject to just such disabilities from the time of arrest. She had her apartment searched, property confiscated, was taken to DEA headquarters, was not free to leave, and was extensively questioned. She was clearly subject to further restraints at the government's pleasure. To find that this was insufficient because she was not placed under "the

**20.** *United States v. Rollins*, 487 F.2d 409 (2nd Cir. 1973).

**21.** *United States v. Scafo*, 470 F.2d 748 (2nd Cir. 1972), *cert. denied*, 414 U.S. 1012, 94 S.Ct. 378, 38 L.Ed.2d 251 (1973).

**22.** *United States v. Valot*, 481 F.2d 22 (2nd Cir. 1973).

**23.** Accepting the government's position would lead to the anomaly that although under Rule 5(b) a judge can only grant a time extension when it is in the "interest of justice," the prosecutor and the defendant can agree, without any justification whatsoever, to dispense with all time limits.

contraints of a formal document," is a disregard of substance.

The government next argues, based on *Flores, supra,* that if the six month period begins with the date of arrest, then there is an incentive for prosecutors to dismiss complaints, and subsequently re-arrest when they are prepared for trial. This argument, however, assumes that the Court in *Flores* would have reached the same result if it had determined that the government had dismissed the complaint in order to get an extension of time. I make no such assumption, for the Court specifically noted its distaste for decisions which would "provide an incentive for devious behavior by Assistant United States Attorneys pressed with heavy case loads and an institutional disfavor with having cases dismissed." 501 F.2d at 1359 n. 3.

■ Under Rule 4, if the government fails to meet the six month deadline, "the court shall enter an order dismissing the indictment with prejudice unless the court finds that the government's neglect is excusable, in which event the dismissal shall not be effective if the government is ready to proceed to trial within ten days." [24] Thus, the final question is whether the government's neglect here was "excusable." In *United States v. Furey,* 500 F.2d 338 (2nd Cir. 1974), the Court of Appeals indicated that the government's failure to anticipate a case of first impression involving the application of the Plan could constitute "excusable neglect." In *Furey,* the government, which had not been ready for trial until a full year after the date of arrest, argued that the six month rule did not apply because the case involved juvenile proceedings. Although the Court of Appeals rejected this argument, it noted that the question had not been decided before, and the "understanding

of the prosecutor of the Plan's applicability at the time" might excuse the government's neglect. *Id.* at 344. Accordingly, it remanded the case to the district court for a finding of whether the neglect had been excusable.[25] *See also United States v. Bowman,* 493 F.2d 594 (2nd Cir. 1974). Here, both the defendant and the government contemplated that the function of the waiver was to provide a basis for avoiding further proceedings within the six month period in order to facilitate the defendant's cooperation. Holding as I do that the waiver by itself does not have the effect both parties believed it to have, I conclude that this case falls into that category articulated by the courts in *Furey* and *Bowman* where the government's neglect is based upon its failure to anticipate a decision in a case of first impression, and is consequently excusable.

Further, I note that the government did not seek a waiver here with the intent of defeating the Plan's purpose. At the time the waiver was signed, the six month period was being tolled by the defendant's indicated willingness to cooperate. See *United States v. Johnson,* 525 F.2d 999 (2nd Cir. 1975). Apparently, the government was attempting to protect itself from the situation in which the defendant lulls it into inactivity by feigning cooperation, and then, at the end of the six month period, becomes suddenly "aggrieved" at the delay and moves for dismissal. *See e. g. United States v. Valot,* 481 F.2d at 25; *United States v. Johnson,* 525 F.2d 999. Although I have found this waiver to be ineffective, the government was "guilty of no more than a good faith mistake" and certainly did not engage in "oppressive conduct." *United States v. Lazard,* 386 F.Supp. 1145, 1148 (S.D.N.Y.1975).

For guidance on the policy underlying the question of remedy, I look to the

---

24. The option of giving the government ten days to be ready for trial was an innovation. Under the Second Circuit Rules, the only remedy was dismissal with prejudice. *See Hilbert v. Dooling,* 476 F.2d 355 (2nd Cir.) (en banc), *cert. denied,* 414 U.S. 878, 94 S.Ct. 56, 38 L.Ed.2d 123 (1973).

25. In deciding upon remand that the neglect was not excusable, Judge Dooling noted that the Assistant United States Attorney had not acted in reliance upon the opinion that juvenile proceedings were not encompassed by the Plan. *United States v. Furey,* Crim. No. 73–608 (E.D.N.Y., filed Aug. 26, 1974) at 4.

**1126**

more specific provisions of the Speedy Act Trial. The Act specifies that:

In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. 18 U.S.C. § 3162(a)(2).

All of these factors mitigate against dismissal here. The offense of which defendant is charged is not trivial: she is accused of being a member of a drug conspiracy, and, as part of her participation, selling 3,000 barbituates for $1,950. I conclude that after consultation with counsel, she made a strategic decision not to press for trial in order that she might later exploit governmental inaction. Permitting the defendant to evade prosecution through this type of gamesmanship is not in the public interest. Rather, "[s]uch an untoward result would undermine public confidence in the adjudication of criminal cases—the touchstone of the Plan." *United States v. Knight*, 529 F.2d 594, 598 (2nd Cir. 1975). However, while permitting prosecution here, I feel it appropriate to quote from *United States v. Bowman*, 493 F.2d at 598 to the effect that this "decision does not mean that a similar practice on the part of the prosecution will be countenanced in the future."

Accordingly, defendant's motion to dismiss is denied on condition that the government file a notice of readiness within ten days of the filing of this opinion. If no notice of readiness is so filed, the motion will be granted and the indictment dismissed with prejudice as to defendant Beberfeld.

So ordered.